**GREAT LIBERTY LIFE INSURANCE COMPANY, Appellant,**

v.

**Dr. C. W. FLINT, Sr., Appellee.**

No. 16121.

Court of Civil Appeals of Texas.

Fort Worth.

June 3, 1960.

C. B. Bunkley, Jr., Dallas, for appellant.

Mehl & Williams, and Morgan Williams, Fort Worth, for appellee.

BOYD, Justice.

On December 4, 1956, J. Dorsey Adams, C. W. Flint, Jr., Marion J. Brooks, I. P. Anderson, and T. J. Updack executed and delivered to Dr. C. W. Flint, Sr., their promissory note in the principal sum of $2,875, payable in installments, with interest. Dr. Flint filed suit on the note against all the makers except T. J. Updack, then deceased, his executrix, Mrs. Callie R. Updack, being a party defendant. Flint also made Great Liberty Life Insurance Company a party defendant, alleging that Deliverer Life Insurance Company assumed and became liable to pay said note, and that Deliverer Life Insurance Company is now Great Liberty Life Insurance Company. Great Liberty Life Insurance Company answered and denied that the note had been assumed by it or its corporate predecessor, or that it was in any wise liable to pay the note.

The cause was originally set for trial on July 13, 1959. It was passed because the attorney for a defendant other than Great Liberty was hospitalized. The next setting was for September 2, but there was "some misunderstanding" since that date was a holiday, and it was passed to September 8. On the call of the September 8 docket, the case was set for September 10. Other business of the court prevented a trial on that date, and the case was reset for September 24, the Judge saying, according to one witness, that it would be tried then " 'In any, and all events.' " However, on that day appellant's attorney was in a trial in another court, and at his request the case was passed again. It was reset for October 1, the court again saying that it would be tried on October 1 " 'in any, and all, events.' "

On October 1, 1959, the case proceeded to trial in the absence of appellant and its attorney. Judgment was rendered against all the defendants for the sum of $3,140.53, with judgment in favor of all the other defendants against Great Liberty indemnifying them for any payment they make on the judgment. On October 9 Great Liberty

filed its motion for new trial, which was presented and overruled on October 23, and Great Liberty appeals.

The motion alleged that appellant's attorney was engaged in the trial of a case in Mt. Pleasant, which began on September 28 and could not be finished by October 1, and that he was informed and believed that the Judge of the court in which the instant case was pending had reset it for either October 15 or October 16, and because of such information and belief neither he nor appellant appeared. It was further alleged that appellant was in no way liable to pay said note, and that its payment had never been assumed.

On the hearing of the motion for new trial, appellant's attorney, C. B. Bunkley, Jr., testified in substance: On Monday, September 28, 1959, he began the trial of a capital criminal case in Mt. Pleasant. On the 30th, when he learned that the criminal case would not be completed by October 1, he contacted by telephone the attorney in Dallas, who shared his office, and asked him to telephone Judge R. B. Young, Judge of the court where the instant case was pending, advise Judge Young of the situation, and request him to pass the case until the completion of the case in Mt. Pleasant. About three hours after he called the Dallas attorney, he received a telephone call from said attorney, who advised him that he had just talked to Judge Young by telephone and that Judge Young told him the case would be passed, and that as soon as appellant's attorney returned to his office in Dallas to get in touch with Judge Young, and the case would be set for either the 15th or the 16th of October. When he returned to his office on October 5 he learned of the default judgment which was rendered on October 1.

Fred J. Finch, the attorney whom appellant's attorney asked to contact Judge Young, testified substantially as follows: On September 30, 1959, he received a telephone call from appellant's attorney, who was then in Mt. Pleasant, and said attorney asked him to call Judge R. B. Young and

tell him that appellant's attorney was engaged in the trial of a criminal case in Mt. Pleasant and would probably not finish the case in time for the trial of the instant case, and to request Judge Young to pass the case. He said he placed a person to person call for Judge Young and talked to him, and that the Judge told him he would be glad to pass the case and suggested that the witness notify appellant's attorney that the case would be reset for October 15 or 16. He then called appellant's attorney in Mt. Pleasant and told him that the Judge said the case would be passed and suggested the two dates for the resetting of the case.

Appellant introduced a letter from the telephone company reading as follows:

"Mr. C. B. Bunkley, Jr.
"3318 South Oakland Avenue
"Dallas, Texas.

"Dear Mr. Bunkley:

"We are glad to furnish information you requested concerning the long distance call on September 30, 1959.
"Our records show the call was as follows:
"Date: 9–30–59   Length of Call: 3 minutes
"To: Fort Worth, Texas to Judge R. B. Young
"From: Your number, HAmilton 1–2674.
"Very truly yours,
"s/  J. R. Innes
"Manager"

After appellant's attorney had finished his direct testimony, Judge R. B. Young, who was hearing the motion for new trial, said: "Let the record show that the Court did not talk to anybody on that date about the case." One of Dr. Flint's attorneys testified as follows: "Q. Did you ever have any conversation on, or subsequent to, September 30, 1959, with Judge Young regarding any long distance telephone conversations that the Judge received from Mr. Finch about the postponement of the case. A. I believe—now, I'm not sure, but I believe I

mentioned it to Judge Young one time, and, at that time, I believe he said that he didn't recall any."

On the issue as to whether appellant has a meritorious defense to the asserted cause of action, under its verified motion containing the allegation that appellant had not assumed and was in no way liable on the note, appellant introduced evidence tending to show that although the borrowers of the money were stockholders and perhaps directors of the Deliverer Life Insurance Company, and used the money in operating a district office in Fort Worth, the Company itself did not authorize the borrowing, its acting secretary, who attended and kept the minutes of all directors and stockholders meetings, did not know of the loan until long after it was made, and the Board of Directors of the Company never assumed it.

■■■ We think appellant's motion for new trial should have been granted. If we could consider Judge Young's statement as testimony in the case a different situation would be presented. But we do not think his statement can be so considered. It is well settled that the Judge presiding at a trial may become a witness in the case. 44 Tex.Jur., p. 991, sec. 45. "However, in assuming the role of a witness, he must do so in accordance with the same rules of procedure that apply to any other witness; namely, to be sworn in the manner and form as required by law, unless such oath be waived by the parties, and be examined and re-examined by the parties to the suit touching his knowledge of the matters in reference to which he may testify." Conyer v. Burckhalter, Tex.Civ.App., 275 S.W. 606, 613, reversed on other grounds, Burckhalter v. Conyer, Tex.Com.App., 9 S.W.2d 1029. Appellee Dr. Flint says that there is "other" credible testimony in the record which tends to show a denial of the alleged telephone conversation between the witness Flint and Judge Young. He refers to the testimony of his own attorney, who testified that he believed that he mentioned the al-

 

leged telephone conversation to Judge Young, "and I believe he said that he didn't recall any." In our opinion, this evidence does not show that the conversation did not take place, although it shows that if it did, Judge Young did not recall it.

The rule seems to be that a default judgment should be set aside where the failure of the defendant to appear and present his defense was not intentional, or the result of conscious indifference on his part. Craddock v. Sunshine Bus Lines, 134 Tex. 388, 133 S.W.2d 124; Houston & T. C. R. R. Co. v. Burke, 55 Tex. 323, 40 Am.Rep. 808; Dowell v. Winters, 20 Tex. 793; Hubbard v. Fidelity & Casualty Co. of New York, Tex.Civ.App., 285 S.W.2d 890; Woods v. Gamboa, Tex.Civ.App., 229 S.W. 2d 1021. In commenting on the decision in Dowell v. Winters, supra, the court in the Sunshine Bus Lines case said [134 Tex. 388, 133 S.W.2d 125]: "Some excuse, but not necessarily a good excuse, was the test there prescribed. When the opinion in that case is analyzed, it seems clear that the absence of an intentional failure to answer rather than a real excuse for not answering was the controlling fact."

We recognize that a new trial to some extent defeats the objective of a speedy termination of litigation; but there is a higher and more important objective essential to the ends of justice than speed alone. The purpose of our Rules of Civil Procedure is to obtain "a just, fair, equitable and impartial adjudication of the rights of litigants * * * with as great expedition and dispatch and at the least expense both to the litigants and to the state as may be practicable, * * *." Rule 1, T.R.C.P. It was said in Panhandle & S. F. Ry. Co. v. Friend, Tex.Civ.App., 91 S.W.2d 922, 932, that "A proper balance between expedition, on the one hand, and preserving the substantial rights of the litigants, on the other, is the paramount goal toward which judicial administration should ever strive, however short it may fall in attaining it."

In declining to set aside the default judgment we believe the learned trial court fell into error. The judgment is accordingly reversed and the cause remanded for a new trial.

Reversed and remanded.