Tom GEORGE, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–98–01315–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

March 30, 2000.

Mike DeGeurin, Houston, for appellant.

Alan Curry, Houston, for appellee.

Panel consists of Chief Justice MURPHY and Justices HUDSON and WITTIG.

## MAJORITY OPINION

J. HARVEY HUDSON, Justice.

The appellant, Tom George, was charged by information with the misdemeanor offense of driving while intoxicated. Appellant initially entered a plea of not guilty, and the parties proceeded to trial. When the jury, after lengthy deliberations, appeared deadlocked, the parties negotiated a plea agreement. Appellant then entered a plea of guilty to the court. In accordance with the plea bargain, the court assessed appellant's punishment at confinement in the Harris County Jail for one hundred days, probated for one year, and a fine of four hundred dollars. Appellant filed a general notice of appeal and now raises four points of error, *i.e.*, the trial judge (1) prejudiced his right to a jury trial; (2) interfered with plea negotiations; (3) coerced a plea of guilty; and (4) erred in presiding over the motion for new trial hearing. We affirm.

## JURISDICTION

Appellant's first three points of error all relate to his contention that his plea of guilty was coerced by the trial judge who, after it became apparent the jury was deadlocked, allegedly threatened to impose, as a condition of community supervision, a thirty-day period of confinement in the county jail if appellant did not immediately reach a plea agreement with the State's attorney. The State contends we have no jurisdiction to entertain these points of error because appellant did not specify in his notice of appeal that (1) the appeal is for a jurisdictional defect; (2) the substance of the appeal was raised by written motion and ruled on before trial; or (3) the trial court granted permission to appeal. *See* TEX.R.APP. P. 25.2(b)(3).

There is a split of authority regarding whether, under the current Rules of Appellate Procedure, a general notice of appeal will confer jurisdiction upon an appellate court to consider the voluntariness of a plea entered pursuant to a plea agreement. A similar split of authority arose under the former rules and was resolved by the Court of Criminal Appeals in *Flowers v. State*, 935 S.W.2d 131, 134 (Tex. Crim.App.1996). There the court held that an appellant may always "raise the issue of whether his plea was voluntary." *Id.* However, ten months after *Flowers* was decided, the Rules of Appellate Procedure were revised. Rule 40(b)(1) of the former rules was replaced by the current Rule 25.2(b)(3).

While Rule 25.2(b)(3) restructures the phrases found in Rule 40(b)(1), the substantive meaning of the rule remains, on its face, unchanged.[1] However, because the Court of Criminal Appeals did not expressly incorporate within the new rule an exception for the voluntariness of the plea, some courts have theorized the Court of Criminal Appeals intended to partially overrule *Flowers* when it adopted Rule 25.2(b)(3).[2] On the other hand, some courts have noted the facial similarity of the two rules and concluded that *Flowers* remains fully viable.[3]

 This court, as well as others, have held that inherent in the concept of "a plea" is the notion that it be free and voluntary.[4] In fact, a court has no authority to accept a plea unless it be made voluntarily. *See* TEX.CODE CRIM. PROC. ANN. art. 26.13(b) (Vernon 1989). A declaration of guilt made under compulsion, duress, or coercion is simply not a plea. Thus, the

---

1. With regard to convictions arising out of a negotiated plea agreement, Rule 40(b)(1) provided:
 > ... in order to prosecute an appeal for a nonjurisdictional defect or error that occurred prior to entry of the plea the notice shall state that the trial court granted permission to appeal or shall specify that those matters were raised by written motion and ruled on before trial.

 Rule 25.2(b)(3) currently provides:
 > ... the notice must:
 > (A) specify that the appeal is for a jurisdictional defect;
 > (B) specify that the substance of the appeal was raised by written motion and ruled on before trial; or
 > (C) state that the trial court granted permission to appeal.

2. *See Long v. State*, 980 S.W.2d 878 (Tex.App.-Fort Worth 1998, no pet.); *Elizondo v. State*, 979 S.W.2d 823, 823–24 (Tex.App.-Waco 1998, no pet.).

3. *See Hernandez v. State*, 986 S.W.2d 817, 819–20 (Tex.App.-Austin 1999, pet. ref'd); *Vidaurri v. State*, 981 S.W.2d 478, 479 n. 1 (Tex.App.-Amarillo 1998, pet. granted). Some courts have continued to rely on *Flowers* for other reasons. *See Davis v. State*, 7 S.W.3d 695, 1999 Tex.App. LEXIS 8278 (Tex. App.-Houston [1st Dist.], 1999); *Minix v. State*, 990 S.W.2d 922, 923 (Tex.App.-Beaumont 1999, pet. ref'd); *Price v. State*, 989 S.W.2d 435, 437 (Tex.App.-El Paso 1999, pet. ref'd); *Luna v. State*, 985 S.W.2d 128, 130 (Tex.App.-San Antonio 1998, pet ref'd).

4. *See Moore v. State*, 4 S.W.3d 269, 272 (Tex. App.-Houston [14th Dist.] 1999, no pet.). *See also Session v. State*, 978 S.W.2d 289, 291 (Tex.App.-Texarkana 1998, no pet.); *Johnson v. State*, 978 S.W.2d 744, 745–46 (Tex.App.-Eastland 1998, no pet.).

restrictions on an appeal from a negotiated plea contained in Rule 25.2(b)(3) have no application where the plea was not entered voluntarily. Rejecting the State's contention, we assume jurisdiction and address appellant's points of error.

## VOLUNTARINESS OF THE PLEA

In his first three points of error, appellant contends the trial judge used intimidation, threats, and hostile remarks to coerce a guilty plea. We have no direct record from the plea hearing, but appellant's trial counsel offered testimony at a hearing on appellant's motion for new trial regarding the events preceding his plea. Moreover, at least a portion, if not all, of court reporter's notes from the plea hearing were read into the record at the motion for new trial hearing.

The cause was initially tried to a jury. The jury began deliberating shortly before noon. Thereafter, the Honorable Mark Atkinson, who was scheduled to attend a judicial conference, asked the Honorable Jean Hughes to receive the verdict for him. At approximately 2:50 p.m., the jury sent out a note indicating they were deadlocked 4 to 2 in favor of a conviction. Judge Hughes gave the jury an *Allen* charge.[5] At 3:25 p.m., the jury sent out a second note saying they were still deadlocked and that no juror was willing to change his or her position. Judge Hughes instructed the jury to continue deliberating.

Appellant's counsel testified that he was negotiating with the State's attorney about a possible plea agreement, when the judge called appellant and his counsel before the bench and inquired about the progress of the negotiations. During these discussions, counsel alleges the judge addressed appellant directly and asked what concerns he had regarding a possible plea agreement. When counsel objected to the judge directly questioning his client, he claims the judge berated him as a neophyte. The judge then allegedly proceeded to inform appellant that if he did not reach some plea agreement, she would impose jail time as a condition of any probation he might receive. Counsel also claims the judge then added that appellant, a Gypsy, would emerge from jail "marimae." This is apparently a Gypsy word that is roughly synonymous with "polluted."

Further, counsel claims that during the subsequent negotiations, the judge learned that appellant was illiterate. The judge allegedly told counsel she was going to add, as a condition of probation, that appellant pass an English proficiency skills test. When appellant asked what would happen to him if he did not learn how to read and write, counsel claims the judge told appellant he would remain on probation for ten years or more.[6] Counsel also testified the judge informed him that if a mistrial had to be declared, the parties would begin a new trial the following day. Counsel informed the court he could not be ready for trial because his witnesses had already been released from their subpoenas.[7]

The record from the plea hearing is silent regarding most of counsel's allegations except for the court's reference to

5. An "Allen" charge, sometimes known as a "dynamite charge," is one instructing a deadlocked jury to continue deliberating. *See Ex parte Menchaca,* 854 S.W.2d 128, 133 n. 3 (Tex.Crim.App.1993). *See also Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

6. Ordinarily, the maximum term of community supervision for a misdemeanor offense is two years. *See* TEX.CODE CRIM. PROC. ANN. art. 42.12, § 3(c) (Vernon Supp.2000). However, the term may be extended as often as the

judge determines is necessary for up to three years, but under some circumstance the court is authorized to extend the term to five years. *See* TEX.CODE CRIM. PROC. ANN. art. 42.12, § 22(c) (Vernon Supp.2000).

7. Judge Hughes "clarified" the record and refuted the allegations of misconduct. However, for reasons set forth in our discussion of appellant's fourth point of error, we will not consider Judge Hughes' remarks in our analysis.

"merimae." The record refutes counsel's assertion that the remark was made during plea negotiations. The comment was made *after*, not before, appellant entered his plea. At the conclusion of the hearing, appellant asked the court: "How about if I don't learn to read or write for another 30, 40 years? Am I still on probation?" The trial judge responded:

> If you go into probation with that attitude, you won't make it one month. Do you understand? You will get a decent attitude or you won't survive probation. You will be doing 100 days in jail and you will be merimae, won't you? You will be polluted.

This comment, coming after the entry of appellant's plea, could not logically have induced the plea.

While appellant's counsel accused the court of misconduct, he offered little, if any, evidence that the alleged improprieties had any influence on appellant's decision to enter a guilty plea. Appellant did not testify at the hearing. Although his verified motion for new trial asserts the plea was involuntary, the motion is merely a pleading, not evidence. *See Mattox v. State*, 874 S.W.2d 929, 936 (Tex.App.-Houston [1st Dist.] 1994, no pet.). The motion did not prove itself, and absent any evidence offered in support of the motion, it was properly overruled. *See Dugard v. State*, 688 S.W.2d 524, 529 (Tex.Crim.App. 1985).

■ Further, there is much direct and circumstantial evidence to indicate the plea was entered freely and voluntarily. Appellant's counsel testified that appellant negotiated directly with the State's attorney, proposing specific numbers he would be willing to accept. After considering the State's offer, appellant agreed to enter a plea against his counsel's advice. As counsel stated, "[I]t was his plea bargain." Before the plea, counsel read the written admonishments to appellant and explained them to him. At the plea hearing, appellant told the court he was pleading guilty for no other reason than that he was guilty. Appellant stated that his attorney had explained the written admonishments to him and that he understood them.

■ Proper admonishment by a trial court creates a prima facie showing that a guilty plea is both knowing and voluntary. *See Ex parte Gibauitch*, 688 S.W.2d 868 (Tex.Crim.App.1985); *Tovar–Torres v. State*, 860 S.W.2d 176, 178 (Tex.App.-Dallas 1993, no pet.). A defendant may, of course, still raise the claim that his plea was not voluntary, but the burden shifts to him to demonstrate that he did not fully understand the consequences of his plea such that he suffered harm. *See Martinez v. State*, 981 S.W.2d 195, 197 (Tex.Crim. App.1998). Further, when a defendant affirmatively indicates at the plea hearing that he understands the nature of the proceeding and is pleading guilty because the allegations in the indictment are true, not because of any outside pressure or influence, he has a heavy burden to prove that his plea was involuntary. *See Crawford v. State*, 890 S.W.2d 941, 944 (Tex.App.-San Antonio 1994, no pet.); *Jones v. State*, 855 S.W.2d 82, 84 (Tex.App.-Houston [14th Dist.] 1993, pet. ref'd).

■ The voluntariness of a plea is determined by the totality of the circumstances. *See Hancock v. State*, 955 S.W.2d 369, 371 (Tex.App.-San Antonio 1997, no pet.); *Munoz v. State*, 840 S.W.2d 69, 74 (Tex.App.-Corpus Christi 1992, pet. ref'd). Moreover, the judge presiding over a motion for new trial is the trier of fact and his findings should not be disturbed absent an abuse of discretion. *See Tollett v. State*, 799 S.W.2d 256, 259 (Tex.Crim.App.1990); *Reissig v. State*, 929 S.W.2d 109, 113 (Tex. App.-Houston [14th Dist.]1996, pet. ref'd). Here, the record suggests at least two intelligent reasons to enter a plea. First, a jury had already considered the evidence against him and four of the six jurors had concluded beyond a reasonable doubt that he was guilty. Second, appellant had two prior convictions. In light of the record before us, we cannot say the trial judge

abused her discretion in overruling appellant's motion for new trial. Appellant's first, second, and third points of error are overruled.

### MOTION FOR NEW TRIAL HEARING

Appellant contends in his final point of error that the trial judge erred in presiding over the hearing on his motion for new trial when the propriety of her conduct was the central issue to be decided. Appellant also argues it was inappropriate for Judge Hughes to preside over the hearing because she was a witness to the alleged misconduct who ultimately testified in rebuttal.

### *Propriety of presiding at the motion for new trial hearing*

Public policy demands that when a judge presides over a trial, he or she must be absolutely impartial. *See Sun Exploration and Production Co. v. Jackson,* 783 S.W.2d 202 (Tex.1989). Ordinarily, an impartial judge is one who has no independent or personal knowledge of the facts bearing on the issues to be decided.[8] However, when a judge entertains a motion for new trial, he will frequently have at least some personal knowledge of facts pertaining to the alleged error. In fact, having been present during the trial, the judge will usually be an eyewitness to the events being complained of. Sometimes, the defendant's complaint focuses, as it does here, on the propriety of the judge's own conduct or statements. Thus, the first issue we must address is whether it is proper for a judge who presided at trial to also preside over the hearing on a defendant's motion for new trial.

The Rules of Appellate Procedure provide that if a defendant files a motion for new trial he "must present the motion for new trial *to the trial court* within 10 days of filing it." TEX.R.APP. P. 21.6 (emphasis added). The court, in turn, must rule on the motion within 75 days of sentencing. *See* TEX.R. APP. 21.8. Thus, our procedural rules seem to contemplate that the same judge who presided at trial will ordinarily decide the motion for new trial. Certainly, this has long been the prevailing practice of Texas trial judges. Well over a hundred years ago, the Texas Supreme Court was prompted to write: "[W]e have no doubt that the regular or any other judge who has presided during the term, may act upon and decide a motion for new trial made in a case tried by him during the term." *Niagara Ins. Co. v. Lee,* 73 Tex. 641, 648, 11 S.W. 1024, 1027 (1889). Thus, in most instances, the truth of the averments in a motion for new trial is a question of fact within the purview of the trial judge.[9]

### *Propriety of relying on personal recollections*

When deciding a motion for new trial, the question is raised whether a judge may properly consider his or her own recollection of events transpiring before the court in the previous proceeding. Although there are few cases touching on this point, the issue was addressed by the Eighth Circuit Court of Appeals in *Tyler v. Swenson,* 427 F.2d 412 (8th Cir.1970). There the petitioner claimed in a post-conviction writ of habeas corpus that his plea had been coerced by the trial judge who allegedly advised him to accept a 20-year plea bargain offer or face the possibility of a 50-year sentence. The defendant's mother testified that she heard this threat made by the judge while the parties were conducting plea negotiations in his chambers. The trial judge immediately remarked that the petitioner's mother had never, at any time, been in the court's

---

**8.** *See generally Wilson v. State,* 792 S.W.2d 477, 483 n. 5 (Tex.App.-Dallas 1990, no pet.); *Arnold v. State,* 778 S.W.2d 172, 178 (Tex. App.-Austin 1989), *aff'd,* 853 S.W.2d 543 (Tex. Crim.App.1993) (applying Rules of Civil Procedure regarding recusal and disqualification of judges to criminal cases).

**9.** *See* 25 Tex. Jur.3d, *Criminal Law* § 3570 (1983).

chambers. Ultimately, the judge found the events testified to by the petitioner and his mother had not taken place, and he denied relief.

On appeal from the denial, the petitioner claimed he had been deprived of a fair hearing because the trial judge "weighed evidence involving his own recollection and observations without petitioner having a right to confront him as a witness on cross-examination." *Id.* at 415. The court of appeals agreed:

> In the instant case, petitioner had no opportunity to cross-examine the trial judge since the judge did not take the stand; furthermore, petitioner had no cause to attempt to disqualify the trial judge until it became apparent after the hearing was concluded that the trial judge was *going to rely upon his own recollection* as an evidentiary basis for denying petitioner's claim.
>
> We think it runs against the grain of fairness to say that the same judge may consider his own crucial testimony and recollection rebutting petitioner's claim and simultaneously pass upon the credibility of all witnesses in weighing the evidence. A member of the judiciary has no peculiar competence in factual recollection of unrecorded events.
>
> . . .
>
> In the instant case, it is urged that because the trial judge did not take the stand as a witness the above rules are not applicable. However, the unfairness of this is compounded when the judge, as was done here, weighs his own *recollection* of events in making his findings.

*Id.* at 415–16. We find *Tyler* to be both unpersuasive and distinguishable from the case before us.

First, the opinion is logically inconsistent. *Tyler* begins by suggesting that due process is violated whenever a trial judge presides over a post-trial hearing, yet the opinion concludes by expressly approving the practice:

> To avoid misunderstanding, we note that it is not our intention by this decision to retreat from the federal and state decisions which accurately point up the recognition that the trial court, *familiar with the prior proceedings*, generally represents the better and more expeditious forum for post-conviction proceedings.

*Id.* at 417 (emphasis added).

If there is any advantage in having the trial judge preside over post-trial hearings, it is precisely because *he or she is already familiar with the facts.* His personal knowledge of the case is the *only* distinguishing characteristic that separates him from fellow jurists. Thus, *Tyler* espouses conflicting positions. On one hand, a trial judge is well-suited to preside over post-trial proceedings precisely because he is familiar with the facts; but, on the other hand, any memory or recollection of those facts violates the defendant's right to due process.

We think it foolish to suggest that a judge can, or must, disregard his memory of events occurring in his courtroom. Immediately after commencing trial, a judge must rely upon his recollection of preceding events every time he rules on an objection. While a judge may ultimately be convinced by evidence and/or the arguments of counsel that his recollection of a particular fact is mistaken, i.e., his memory of a specific event is flawed or his senses did not accurately capture the event in question, a magistrate is not capable of intelligent thought or making even the most elementary decisions without reference to facts recalled from memory.

Second, we believe *Tyler* is mistaken in suggesting that a judge's unarticulated recollection of events or proceedings from the trial can rightly be characterized as "testimony" or that the memory of such events transforms the judge into a "witness." If a judge possesses independent knowledge of a case, he may be subject to recusal, but if the court's knowledge is derived solely from the testimony and

events witnessed by him in the courtroom, he does not thereby become a "witness" and his recollection of the proceedings is not "testimony."

> As a general rule, for purposes of recusal, a judge's " 'personal' knowledge of evidentiary facts means 'extrajudicial,' " so "facts learned by a judge in his or her judicial capacity regarding the parties before the court, whether learned in the same or a related proceeding, cannot be the basis for disqualification."

*Conkling v. Turner*, 138 F.3d 577, 592 (5th Cir.1998) (quoting *Lac du Flambeau Indians v. Stop Treaty Abuse–Wis.*, 991 F.2d 1249, 1255–56 (7th Cir.1993)).

A judge who cannot remember from one moment to the next what has previously transpired in the proceeding can not fairly preside over the cause. It is the intuitive recognition of this precept that frequently generates alarm among the parties when a substitution of judges occurs during or immediately after trial.[10] Thus, a judge's recollection of previous proceedings in the cause cannot be characterized as "testimony."

Third, *Tyler* dealt with a hearing on a writ of habeas corpus which rests directly upon a constitutional foundation. Here, the trial judge was presiding over a motion for new trial derived from rules of appellate procedure. *See* Tex.R.App. P. 21.1— 21.9; *see also Phynes v. State*, 828 S.W.2d 1, 2 (Tex.Crim.App.1992); *Fuentes v. State*, 960 S.W.2d 926, 927 (Tex.App.-Tex-

arkana 1998, no pet.) (holding that there is no constitutional right to appeal a criminal conviction). Thus, any constitutional error occurring here must be predicated upon due process or due course of law provisions. To the extent that due process rights are implicated and threatened by the prospect of a trial judge deciding the merits of a motion for new trial, the movant has the right to file a motion to recuse.[11] Moreover, he has an absolute right to have the recusal motion determined by a different judge. *See* Tex.R. Civ. P. 18a(d).[12]

Here, appellant attempted to show that the trial judge had not merely erred, but had purposefully intervened in the plea negotiations and by deliberate intimidation, coerced an involuntary plea. If true, these actions would cast serious doubt on the judge's suitability to impartially decide his request for a new trial. Appellant, however, did not file a motion to recuse.

■■■ Appellant contends he had no notice that Judge Hughes would preside over the hearing on his motion for new trial. However, because Judge Hughes had presided over the trial, counsel was undoubtedly aware there was at least a *possibility* that she would also preside over the hearing for new trial. Moreover, while counsel made an initial objection to Judge Hughes' authority to sit in place of Judge Atkinson, he did not move to recuse her at *any* time

---

**10.** *See Villarreal v. State*, 860 S.W.2d 529, 535 (Tex.App.-Corpus Christi 1993, pet. ref'd) (where defendant claimed the use of four different judges resulted "in discontinuity and lack of familiarity by the judges with previous proceedings"); *Jimenez v. State*, 838 S.W.2d 661, 665–667 (Tex.App.-Houston [1st Dist.] 1992, no pet.) (where defendant complained he was denied a fair trial and due process when, after two days of trial, there was a substitution of judges). *See also Webb v. State*, 755 S.W.2d 222, 225 (Tex.App.-Houston [1st Dist.] 1988, pet. ref'd) (Smith, J., dissenting, states that courts "should be reluctant to approve the assessment of punishment by a judge who did not hear the evidence that led

to conviction, when the judge who did is available").

**11.** *See CNA Ins. Co. v. Scheffey*, 828 S.W.2d 785, 793 (Tex.App.-Texarkana 1992, writ denied) (holding that where appellant moved to recuse trial judge from deciding the motion for new trial, the judge of the administrative district was required to designate a judge to hear the recusal motion).

**12.** Rule 18a applies to recusal matters in criminal cases. *See Stafford v. State*, 948 S.W.2d 921, 924 (Tex.App.-Texarkana 1997, pet. ref'd); *Sanchez v. State*, 926 S.W.2d 391, 394 (Tex.App.-El Paso 1996, pet. ref'd).

during the course of the hearing.[13] If appellant believed Judge Hughes could not fairly preside over the hearing, he should have attempted to foreclose that possibility by filing a motion to recuse.

■ By its very nature, a motion for new trial is a revisitation or reconsideration of facts and issues with which the court is often familiar. Unless the trial judge is disqualified or has been recused, it is not improper for a trial judge to preside over a hearing on a motion for new trial and review the propriety of his or her own rulings, pronouncements, or conduct. Moreover, when deciding a motion for new trial, it is not improper for the trial judge to rely, in part, upon his or her personal recollections of the evidence and proceedings at trial.

### Propriety of articulating recollections

■ The next question presented is whether a judge may properly articulate for the record those facts recalled by him bearing on issues raised in the motion for new trial. In other words, may the judge publicly articulate what he is authorized to privately consider? Here, the trial judge "clarified the record" with a lengthy statement in which she relied upon her recollection of the events preceding appellant's plea to refute much of the testimony of his trial counsel.

The complete text of the trial judge's comments are contained in an appendix to this opinion, but in summary, she (1) set forth the sequence of events preceding the plea, (2) explained how she became involved in the plea negotiations, (3) stated how she learned of appellant's illiteracy, (4) refuted counsel's accusation that she had threatened appellant with incarceration, (5) and told how the term "marimae" had arisen during the course of the proceedings. We find it difficult to characterize the trial judge's remarks as a mere "clarification" of the record.

■ It is well-established that a trial judge may clarify the record when the spoken word does not reflect the true trial proceedings, and explanations of this sort may be of assistance to an appellate court. See Myers v. State, 781 S.W.2d 730, 733–34 (Tex.App.-Fort Worth 1989, pet. ref'd). For example, when a witness points to or describes the clothing of the defendant worn at trial, the judge may direct that the record reflect that the witness identified the defendant. Id. See also Martinez v. State, 822 S.W.2d 276, 282 (Tex.App.-Corpus Christi 1991, no pet.) and Chase v. State, 750 S.W.2d 41, 43–44 (Tex.App.-Fort Worth 1988, pet. ref'd) (where trial judge clarified the record by explaining that a child witness identified the vaginal area of an anatomically correct doll).

■ "Clarification" of the record is proper where the trial judge, acting as the "eyes" of the appellate court, makes an

---

13. Rule 18a of the Rules of Civil Procedure requires that a motion to recuse be filed ten days before the trial or hearing in question. However, the rule does not contemplate the situation in which a party cannot know the basis of recusal prior to trial. Thus, a court may, in its discretion, consider an untimely motion to recuse. See Kirby v. Chapman, 917 S.W.2d 902, 910 (Tex.App.-Fort Worth 1996, no writ). Here, however, appellant made no attempt to recuse Judge Hughes or object to her presiding over the hearing for any reason other than she was presiding outside her courtroom:

> THE COURT: Are you ready to proceed on its motion for new trial, Mr. DeGeurin?
> MR. DEGEURIN: All right. Well, you will also—might be a witness and -

THE COURT: I have not been subpoenaed. We're ready to proceed, so if you have evidence, let's proceed.
MR. DEGEURIN: All right. I'm not calling you as a witness, but the State may.
THE COURT: I have not been subpoenaed by anybody, so let's proceed.
MR. DEGEURIN: All right. While I would have to—I will have to state, Your Honor, that I would object to you hearing the plea since it was in Judge Atkinson's court and the trial was in Judge Atkinson's court.
THE COURT: But as it turned out to be a plea, and I am the Judge that took the plea, and I am going to hear the hearing so proceed.

explanation of some event or physical phenomenon observable to those in the courtroom and about which there is no reasonable dispute. Here, the judge recited facts which were very much in dispute. In fact, she carefully rebutted each allegation of impropriety made by appellant's trial counsel. Thus, we find the comments at issue fall outside a proper "clarification" of the record.

█ Appellant contends trial judge's remarks are "testimony" and that by uttering such remarks she made herself a witness in the case. By her own admission, the judge sought to amplify the appellate record—something normally reserved only for witnesses. Further, the burden of making a record to reveal or dispel error rests with the parties, not the court. In her role as a fact-finder, the judge may consider her personal recollections of prior testimony and events in the cause, but she must do so silently. Once the judge begins assisting one side or the other in constructing a record, her position is altered from one of being a neutral fact-finder to an adversary. "It is difficult to see how the neutral role of the court could be more compromised, or more blurred with the prosecutor's role, than when the judge serves as a witness for the state." *Brown v. Lynaugh*, 843 F.2d 849, 851 (5 th Cir.1988).

We recognize that when a judge's character, impartiality, or professionalism has been impugned, it may be difficult to resist the urge to "set the record straight." Such was the case in *Great Liberty Life Ins. Co. v. Flint*, 336 S.W.2d 434 (Tex.Civ. App.-Fort Worth 1960, no writ.). There the court proceeded to trial in the absence of the defendant company or its attorney after the case had been reset for trial on numerous occasions. At the hearing on the defendant's motion for new trial, counsel testified that he had contacted the trial judge by telephone a month prior to the trial date in question. He further testified that the judge had agreed to reset the case for two weeks. At the conclusion of the

testimony, the trial judge said, "Let the record show that the Court did not talk to anybody on that date about the case." *Id.* at 436.

In deciding the merits of the appeal, the appellate court characterized the trial judge's comment as "testimony." However, because the judge had not been sworn as a witness or made himself available for cross-examination, the court of appeals concluded it could not properly consider his remarks. *Id.*

When *Great Liberty* was decided, it was not considered improper for a judge to testify in the same proceeding over which he was presiding. A judge presiding over a trial could testify as a witness in the case so long as he was sworn like any other witness. *See Howell v. State*, 146 Tex. Crim. 454, 455, 176 S.W.2d 186, 187 (Tex. Crim.App.1943). The current rules of evidence expressly forbid this practice. Rule 605 provides:

> The judge presiding at the trial may not testify in that trial as a witness. No objection need be made in order to preserve the point.

TEX.R. EVID. 605.

Whether Rule 605 is applicable at a motion for new trial hearing is not clear. The rule seems, on its face, to have no application outside of a "trial." *See Orion Enterprises, Inc. v. Pope*, 927 S.W.2d 654, 660 (Tex.App.-San Antonio 1996, orig. proceeding) (holding the rule was not applicable in a pretrial venue hearing). The Court of Criminal Appeals has on two occasions, however, substituted the word "proceeding" for "trial" when discussing the rule's application. *See Kemp v. State*, 846 S.W.2d 289, 310 n. 9 (Tex.Crim.App. 1992); *Hensarling v. State*, 829 S.W.2d 168, 171 (Tex.Crim.App.1992). From the context of the issues under discussion in those cases, it is impossible to determine whether this deviation was intentional or is otherwise significant.

The Court of Criminal Appeals has been careful, however, to emphasize that the

rule applies only to situations where the judge testifies formally:

> The language of Rule 605 is unambiguous, and construing this rule according to rules of grammar and common usage leads to only one interpretation of the rule. The phrase "the judge presiding at the trial may not testify in that trial" means that the judge who is presiding over a proceeding may not "step down from the bench" and become a witness in the very same proceeding over which he is currently presiding.

*Hensarling*, 829 S.W.2d at 171. *See also Kemp*, 846 S.W.2d at 310 n. 9 (noting that Rule 605 circumscribes only that situation in which a trial judge would actually "step down from the bench" to become a witness); *Hammond v. State*, 799 S.W.2d 741, 747 (Tex.Crim.App.1990) (holding that where court informed jurors that the defendant had escaped from custody, "the trial judge acted within his judicial capacity, and did not 'testify' ").

Whether or not the remarks under consideration here constitute "testimony," we are not unmindful of Rule 605's intended objective, i.e., to preserve the judge's posture of impartiality before the parties and the jury. *See Bradley v. State ex rel. White*, 990 S.W.2d 245, 248 (Tex.1999). The trial court's detailed rebuttal of appellant's evidence could reasonably be interpreted as adversarial in nature. Thus, even if the trial judge's remarks do not constitute "testimony" under the Rules of Evidence, we find they are expressly prohibited by the Rules of Appellate Procedure. *See* Tex.R.App. P. 21.8(b) ("In ruling on a motion for new trial, the court must not summarize, discuss, or comment on evidence.")

■ Although *Great Liberty* was decided before the adoption of Rule 605 or Rule 21.8(b), the court's objective was the same as the one we pursue today—to maintain the trial judge's office as an impartial fact-finder. Accordingly, we adopt the same appellate remedy utilized in *Great Liberty*. When a judge summarizes, discusses, or comments on evidence in ruling on a motion for new trial, we will decline to consider those remarks in deciding whether the court abused its discretion in ruling on the merits of the motion.

■ While we find the court erred in commenting on the evidence at the conclusion of the motion for new trial, the comments do no not constitute reversible error without a showing that appellant was harmed. *See Lewis v. State*, 911 S.W.2d 1, 8 n. 16 (Tex.Crim.App.1995). Because we declined to consider the remarks of the trial judge in our disposition of appellant's first three points of error, appellant has not been prejudiced by her summation of the evidence. Appellant's final point of error is overruled.

The judgment of the trial court is affirmed.

### APPENDIX

THE COURT: Okay. For the record, since I was the Judge who took this plea, let me clarify the record.

Judge Atkinson was to serve as a facilitator in the judicial conference that was going on in Houston that week and had asked me that—before lunch he had a jury out deliberating, would I accept the verdict for him, which I agreed to do, which is not unusual practice.

Approximately after the 2:50 note is when I brought the jury out and read the Allen Charge to them. It was immediately as the jury departed the courtroom that I ordered the parties to begin plea bargaining and see if they could not work this out. The plea negotiations were progressing slowly, there were trips in and out between the DA and the lawyer.

I was concerned about the progression, if they were being made in good faith, and I did advise the attorneys that I was available the next day, I had nothing set for trial. I could in fact try this case the next day, as Judge Atkinson had a visiting judge scheduled to try other matters, but I

was available to try if the witnesses were available. That is the only time this court said anything about trying the case the next day. No one even mentioned it to me again after that.

I felt it was necessary to bring the defendant in at one point to go over the plea bargain agreement with him, as this Court had concerns based on Mr. VonBlon's behavior and attitude in the court as to whether Mr. George was really understanding the plea offer.

I was advised by Janet Kleban there was a problem because the defendant didn't read or write, and I informed Ms. Kleban, that's a standard condition of probation that everyone take a skills test to show that they have obtained a certain level. That was a standard condition of probation, at which time Ms. Kleban left the courtroom and went out, I guess to talk to the attorney.

MR. DEGEURIN: Your Honor, may I interrupt?

THE COURT: No, you may not. Have a seat.

MR. DEGEURIN: Are you subject to cross-examination?

THE COURT: No, sir, I'm not. Have a seat. I want to clarify the record.

There was discussions at the bench with the defendant, his attorney and the State as to what the potential conditions of probation were. There was concern whether or not this defendant could comply with the conditions of probation. And this Court did tell him, as I understand Judge Atkinson told him prior to the trial that 30 days as a condition of probation is always an option the Court has. He was never told he was going to be sentenced by me to 30 days, but that was an option the Court had as a condition of probation.

He was never told he could be on probation for ten years as Mr. VonBlon indicated.

I had given the parties more than an hour to negotiate, from approximately—it was 4 or 5 minutes to 3:00 when I asked them to start negotiating. They went back and forth, nothing was agreed, and I had a jury that was out. I had to make a determination whether I was going to declare a mistrial or continue to have them deliberate. And finally at 4:00 o'clock I said it's put up or shut up time. We're either going to do this or not, I need to know, because I thought it had been stalled and drug out and was not being conducted in good faith.

As far as the marimae, I am familiar with gypsies, I do know marimae means polluted, and in the gypsy culture if a person goes to jail they are considered marimae. There is no correct spelling, I spell it M-A-R-I-M-A-E. And because of Mr. George's attitude, his remark about what if it takes me 30 to 40 years to learn to read, his tone was extremely sarcastic, indicative of him not going to have a very good attitude going on probation. And I felt that he needed to understand what could happen to him, make it very clear to him what could happen if he did not comply with the conditions of probation. Because in earlier plea discussions there was—I was informed there was an alternative offer of straight jail time rather than probation, but then he indicated that he wanted to take the probation. And I—the Court felt that the plea was free and voluntarily given.

Just for the record, Defense Exhibit No. 4, which is the note that I answered, Keep deliberating, that came out after I gave them the Allen Charge, while they were still in plea negotiations.

With that, the motion is denied.

MR. DEGEURIN: Your Honor -

THE COURT: The motion is denied.

MR. DEGEURIN: Yes, Your Honor, but it's—I must state my position. You continuously granted objections where I was trying to present evidence that may have called for hearsay. And then sitting

on the Court on Judge Atkinson's bench today, you make statements that include hearsay, not subject to cross-examination, not allowing a full record, simply opinions and thoughts and hearsay of your own, and I don't know who you have been talking to about what the plea offers were before you got involved in the plea negotiations, but, you know, I don't have a chance to even object or ask you questions about that, Judge.

THE COURT: Counsel, these are not opinions, these are what actually happened. I was the Presiding Judge in the Court at the time.

Motion is denied. We're through with this hearing.

MR. DEGEURIN: I want to ask how it came that you are sitting today in Judge Atkinson's court?

THE COURT: This hearing is over, Counsel.

PAUL C. MURPHY, Chief Justice, dissenting.

Because the majority mischaracterizes appellant's complaint on appeal as well as the holding in *Tyler v. Swenson*, 427 F.2d 412 (8 th Cir.1970), I respectfully dissent.

By ignoring the heart of appellant's complaint, the majority makes an easy case for themselves. Rather than squarely reaching all issues raised by appellant, the majority couches appellant's challenge to Judge Hughes' competency to hear appellant's motion for new trial only in terms of the trial judge having knowledge of relevant facts. While appellant makes this challenge, he also asserts that he was denied due process because Judge Hughes testified at a hearing over which she presided denied him the right to an impartial hearing. I believe that the potential for partiality inherent in Judge Hughes' conduct runs afoul of the structural due process protections of the Constitution. *See In re Murchison*, 349 U.S. 133, 135, 75 S.Ct. 623, 99 L.Ed. 942 (1955). (holding that "[a] fair tribunal is a basic requirement of due process"). Judge Hughes' conduct, therefore, impacts appellant's due process rights, raises questions about the integrity of the proceeding, and prevents us from showing deference to her rulings. Thus, I would reverse Judge Hughes' ruling on appellant's motion and remand the case for a new hearing presided over by a different judge.

It is clear that Judge Hughes' statements at the close of the hearing constituted testimony. In addressing this issue, "[t]he question should be whether the judge's statement of fact is essential to the exercise of some judicial function or is the functional equivalent of witness testimony." *Hammond v. State*, 799 S.W.2d 741, 746 (Tex.Crim.App.1990) (citing 27 WRIGHT & GOLD, FEDERAL PRACTICE AND PROCEDURE: FEDERAL RULES OF EVIDENCE § 6063, p. 353 (1990)). Here, Judge Hughes' testimony directly controverted the testimony of appellant's trial attorney and served no apparent judicial function. *C.f. Hammond*, 799 S.W.2d at 746–47 (stating that though the judge's statements to the jury about defendant's escape was a relevant fact issue not yet in evidence, it also served to warn the jurors of the defendant's escape and was motivated by safety concerns). Though she claimed to be clarifying the record, a permissible judicial function, I agree with the majority that she went beyond clarification of the record, making her statements testimony.

Not only did she testify, however. Her testimony was clearly adverse to appellant, giving the judge the appearance of bias frowned on by the Constitution. *Brown v. Lynaugh* 843 F.2d 849, 851 (5 th Cir. 1988) ("[I]t is difficult to see how the neutral role of the court could be more compromised, or more blurred with the prosecutor's role, than when the judge serves as a witness for the state."); *Tyler*, 427 F.2d at 415 ("We think it runs against the grain of fairness to say that the same judge may consider his own crucial testimony and recollection rebutting petitioner's claim and

simultaneously pass upon the credibility of all witnesses in weighing the evidence").

Because the judge's testimony created the appearance of unfairness and a lack of impartiality, the harm is so severe that we need not inquire into actual prejudice. *See Arizona v. Fulminante,* 499 U.S. 279, 309, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). The error committed in this case was an error in the hearing itself, rather than an error in the trial process, making it a structural error. *See id.* at 310, 111 S.Ct. 1246. Furthermore, structural errors are so fundamental they are not subject to harmless error analysis. *See id.* at 309–10, 111 S.Ct. 1246.

The majority, however, disagrees with this binding precedent. Though conceding that the judge testified and it was erroneous for her to do so, it applies a harmless error analysis to this error, relying on *Great Liberty Life Ins. Co. v. Flint,* a thirty-year-old court of civil appeals decision with weak precedential value. *See* 336 S.W.2d 434, 436 (Tex.Civ.App.—Fort Worth, no writ).

Its reliance on *Great Liberty* is misplaced for at least four reasons. First, *Great Liberty* was decided at a time when Texas law allowed judges to become witnesses at proceedings over which they presided. *See Great Liberty,* 336 S.W.2d at 436;[1] *but see* Tex.R. Evid. 605 (preventing judges from both presiding over and testifying at the same trial). Second, *Great Liberty* has not been cited as authority by any court in almost fifteen years, a fact which when coupled with the case's lack of writ history makes it a decision with only questionable precedential value.[2] Third, *Great Liberty* was decided before *Fulminante*'s clear stance opposing such judicial

conduct. Finally, it is an elementary legal principle that state appellate court opinions are secondary to U.S. Supreme Court opinions on the same subject. Since *Great Liberty* applies an analysis forbidden by the U.S. Supreme Court, its holding should be subservient to that of the highest court in the land.

The majority's harmless error analysis illustrates why the Supreme Court frowns on its application to instances where a judge testifies at a hearing over which she presides. By following *Great Liberty*'s effete directive to ignore the judge's testimony and render a decision based on the other testimony presented, the majority cures only the error of the judge's testimony. While such judicial maneuvering is effective in that it diminishes the error of the judicial testimony itself, it does not, however, remove the taint of bias and prejudice that Judge Hughes' testimony gave to the entire proceeding. The Constitution forbids even the appearance of partiality brought by a judge who considers his own testimony when ruling on a motion before him. *See Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955); *see also Kennedy v. Great Atlantic & Pacific Tea Co.,* 551 F.2d 593, 596–97 (5th Cir.1977) (calling any suspicion that justice has been interfered with by a judge or other court official intolerable and "unacceptable"); *Bradley v. State ex rel. White,* 990 S.W.2d 245, 249 (Tex.1999) (applying and recognizing this same analysis in the context of a challenge to judicial testimony based on Tex.R. Evid. 605). Unfortunately, this prohibition and the impact Judge Hughes' testimony had on the integrity of the proceeding are ignored by the majority's harmless error scheme.[3]

1. This old rule allowing a judge to testify, Vernon's Ann. C.C.P.1925, art. 717, was replaced by the now repealed Tex.Code.Crim. P. Ann. art 38.13. Art. 38.13 was found unconstitutional by the Fifth Circuit. *See Brown v. Lynaugh,* 843 F.2d 849, 851 (5th Cir.1988).

2. In fact, the most recent case citing *Great Liberty* states that "the true basis [for the court's opinion in *Great Liberty*] is in doubt." *See Duvall v. Sadler,* 711 S.W.2d 369, 375 (Tex.App.—Texarkana 1986, writ ref'd n.r.e.) (op. on reh'g).

3. The majority also alludes to the judge's conduct potentially violating Tex R. Evid. 605, depending upon whether or not it applies outside of a trial context. The majority states that the Court of Criminal Appeals "has been

Not only does the majority opinion miss the mark on this issue, but it also misconstrues *Tyler v. Swenson.* In that case, the defendant alleged in a post-conviction motion that the trial judge had made statements to the defendant during plea discussions that coerced him to plead guilty. *See Tyler,* 427 F.2d at 412–14. The hearing on the motion was presided over by the same judge whose conduct was challenged in the motion. *See id.* at 413. The judge took an active role at the hearing, offering testimony that directly contradicted that of the appellant's witnesses and gave the judge the appearance of being aligned with the prosecution. *See id.* at 414. The Missouri state intermediate and supreme courts found that it was not erroneous for the judge to hear the post-conviction motion because the defendant failed to attempt to recuse the judge and the judge did not actually take the stand as a witness and, therefore, did not testify. *See id.* at 414 (citing *State v. Tyler,* 440 S.W.2d 470 (Mo. 1969)). The Eighth Circuit reversed the decision of the state court, finding that the judge testified even though he was not formally called as a witness. *See id.* at 415–16. The court also found that the judge's testimony violated appellant's due process right to a fair an impartial trial. *See id.*

Regardless of the close factual similarity between *Tyler* and this case, the majority unconvincingly attempts to distinguish it on several grounds.

The majority's misperception of *Tyler* begins with the notation that the opinion is inconsistent because it "begins by suggesting that due process is violated whenever a trial judge presides over a post-trial hear-

ing, yet ... concludes by expressly approving of the practice." Maj. Op. at 137. Though the majority provides a citation to support its statement about the conclusion of the opinion, it fails point to exactly where in the opinion the *Tyler* court makes the suggestion that trial judges cannot preside over post-trial motions. This is not due to mere oversight on the part of the majority—the opinion makes no such suggestion. The opinion does, however, draw a clear line by stating expressly that a judge cannot preside over a trial in which he is a witness. *See Tyler,* 427 F.2d at 415.

Apparently unsure of its first attempt to distinguish *Tyler,* the majority makes two more attempts. It further misconstrues the case by stating that the case suggests that a "judge's unarticulated recollection of events" can be testimony. Maj. Op. at 137. The *Tyler* court, however, dealt with a situation where the judge clearly articulated his recollection of events. *See Tyler,* 427 F.2d at 414. The majority also seeks to distinguish *Tyler* because the *Tyler* court was addressing the issue on a writ of habeas corpus, which is constitutional in nature, rather than on a motion for new trial, which is merely a matter of state procedure. This distinction, however, is one without a difference. The grounds asserted in appellant's motion for new trial were constitutional (i.e., the denial of cross-examination of a witness and the lack of a fair and impartial proceeding). Moreover, the underlying case in *Tyler* was based on a post-trial motion much like Texas' motion for new trial. *See id.* at 415. Regardless, as the *Tyler* court points out, "[s]tate procedural rules are subservient to basic requirements of due pro-

careful ... to emphasize the rule applies only to situations where the judge testifies formally," Maj. Op. at 140. The Court of Criminal Appeals' application of Rule 605 is far from clear, however. *Compare Hensarling v. State,* 829 S.W.2d 168, 171 (Tex.Crim.App.1992) (stating that Rule 605 only applies to situations where a judge " 'steps down from the bench' and becomes a witness in the very same proceeding over which he is currently

presiding.") *with Hammond v. State,* 799 S.W.2d 741 (Tex.Crim.App.1990) (applying Rule 605 to a situation where a judge called jurors during a trial).

If Rule 605 does apply, however, the error is not subject to harmless error review. *See Bradley v. State ex rel. White,* 990 S.W.2d 245, 249 (Tex.1999). This contingency is ignored by the majority's application of harmless error *to the judge's conduct.*

cess." *Id.* These grounds for distinguishing *Tyler* are weak, at best.

The final problem with the majority's challenge to *Tyler* is the fact that the case and its analysis recently have been cited with approval by the Texas Supreme Court. *See Bradley,* 990 S.W.2d at 248 (Tex.1999).

Here, the majority makes the same mistakes frowned upon by the *Tyler* court. They state that a defendant must protect his Due Process rights to a fair and impartial trial by filing a motion to recuse, and fault him because he failed to file such a motion. Maj. Op. at 138–139. There are several problems with this proposition, as well. First, there was no indication that Judge Hughes would preside over the motion for new trial. The motion and orders were filed in Judge Atkinson's court, and the hearing was reset at least once by Judge Atkinson's clerk. Nor was any notice given to appellant or his counsel that Judge Atkinson would not preside over the hearing. Second, the grounds for recusing Judge Hughes did not become clear until after she testified at the end of the hearing. By then it was too late to file the motion to recuse, which must be filed at least ten days before the proceeding. *See* TEX.R. CIV. P. 18a; *Stafford v. State,* 948 S.W.2d 921, 924 (Tex.App.—Texarkana 1997, pet. ref'd) (acknowledging the application of the civil recusal rule in the criminal context). Finally, while it is true that the appellant had to be aware of the "possibility" that Judge Hughes would preside over the trial, Maj. Op. at 138, it was equally possible that any other judge could have presided over the hearing. The majority's logic would require criminal defense attorneys to come to every hearing armed with verified motions to recuse any judge who potentially might be recusable, an absurd requirement not contemplated by the procedural rules of this state.

*Tyler* and other such decisions recognize that the public confidence in the judiciary is undermined when a judge can consider her own testimony in ruling on a defendant's guilt or on a defendant's post-trial motion. This confidence is especially undermined when the judge whose behavior is challenged through the procedural safeguards put in place by the legislature is the very judge who commits this apparent impropriety. As Justice Frankfurter so aptly stated, "[J]ustice must satisfy the appearance of justice." *Offutt v. United States,* 348 U.S. 11, 13, 75 S.Ct. 11, 99 L.Ed. 11 (1954). Here, unfortunately, the judge's conduct in denying appellant's motion gives the proceeding the appearance of bias and taint of partiality that our courts cannot have and still be considered fair. Moreover, the majority's application of harmless error to this conduct can only be seen as encouraging it—an encouragement not given by the analysis articulated in *Tyler.*

Though the majority's analysis muddies the waters somewhat, three things here are clear and apparently conceded by the majority. It is clear and the majority apparently concedes that Judge Hughes testified. Maj. Op. at at 139–140. Likewise, it is clear and apparently conceded by the majority that Judge Hughes' testimony was adverse to appellant and favorable to the State. Maj. Op. at 139. Also, it is clear and apparently conceded by the majority that this behavior impacted appellant's due process rights. Maj. Op. at 138.

The Supreme Court is also clear in holding that situations such as this are intolerable because they give the judicial system a patina of partiality and unfairness that cannot be cured through the application of harmless error review. *See Fulminante,* 499 U.S. 279, 309, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); *Murchison,* 349 U.S. at 136, 75 S.Ct. 623. Thus, the result in this case should also be clear—remand the case back to the trial court for a new hearing on appellant's motion. Because the majority, however, loses its way, I respectfully note my dissent.