**Rafael MARTINEZ, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–00–237–CR.**

Court of Appeals of Texas,
Fort Worth.

May 17, 2001.

Francisco Hernandez, Jr., Fort Worth, Attorney for Appellant.

Tim Curry, Criminal District Attorney, Chuck Mallin and Curtis Jenkins, Assistant District Attorneys, Fort Worth, Attorneys for State.

PANEL D: DAY, LIVINGSTON, and DAUPHINOT, JJ.

## OPINION

DAY, Justice.

Rafael Martinez attempts to appeal the trial court's judgment placing him on deferred adjudication community supervision for failing to stop and render aid. We grant the State's motion to dismiss the appeal for want of jurisdiction.

### BACKGROUND

On April 24, 2000, pursuant to a plea bargain agreement, appellant pleaded guilty to the offense of failure to stop and render aid and was placed on two years' deferred adjudication community supervision. Appellant filed a timely motion for new trial, but, after a hearing, the motion was denied. On June 22, appellant filed a general notice of appeal, and, on October 31, he filed an amended notice of appeal stating he had received permission from the trial court to appeal his guilty plea. Attached to the amended notice as Exhibit A is a copy of appellant's request for permission to appeal and the trial court's October 24, 2000 order granting permission.

Because appellant's original notice of appeal did not conform to the mandatory requirements of rule 25.2(b)(3), in that it does not specify the appeal is from a jurisdictional defect, that the substance of the appeal was raised by written motion and

ruled on before trial, or that the trial court granted permission to appeal, and because the amended notice was filed outside the time to perfect his appeal, we informed appellant's counsel by letter dated November 7 that we were concerned that his notices failed to invoke our jurisdiction. Appellant's counsel responded by letter brief, urging that notwithstanding the extra-notice requirements of rule 25.2(b)(3), he could raise a challenge to the voluntariness of his plea on appeal. He acknowledges that this court has held contrary to his position, but contends *Flowers* is still good law. *See Villanueva v. State*, 977 S.W.2d 693, 695–96 (Tex.App.—Fort Worth 1998, no pet.); *see also Flowers v. State*, 935 S.W.2d 131, 133 (Tex.Crim.App. 1996) (holding that compliance with former rule 40(b)(1) was not necessary to raise a voluntariness challenge on appeal). Also before the court is the State's motion to dismiss the appeal, in which the State argues that neither appellant's general notice of appeal nor his amended notice confers jurisdiction on this court.

### DISCUSSION

██ Jurisdiction concerns the power of a court to hear and determine a case. *State v. Riewe*, 13 S.W.3d 408, 410 (Tex. Crim.App.2000); *Olivo v. State*, 918 S.W.2d 519, 522 (Tex.Crim.App.1996). Appellate jurisdiction is invoked by giving timely and proper notice of appeal. *Riewe*, 13 S.W.3d at 410. Rule 25.2 of the rules of appellate procedure governing perfection of an appeal in a criminal case provides in relevant part as follows:

**25.2 Criminal Cases**

(a) *Perfection of Appeal.* In a criminal case, appeal is perfected by timely filing a notice of appeal. In a death-penalty case, however, it is unnecessary to file a notice of appeal.

(b) *Form and Sufficiency of Notice.*

(1) Notice must be given in writing and filed with the trial court clerk.

(2) Notice is sufficient if it shows the party's desire to appeal from the judgment or other appealable order, and, if the State is the appellant, the notice complies with Code of Criminal Procedure article 44.01.

(3) But if the appeal is from a judgment rendered on the defendant's plea of guilty or nolo contendere under Code of Criminal Procedure article 1.15, and the punishment assessed did not exceed the punishment recommended by the prosecutor and agreed to by the defendant, the notice must:

(A) specify that the appeal is for a jurisdictional defect;

(B) specify that the substance of the appeal was raised by written motion and ruled on before trial; or

(C) state that the trial court granted permission to appeal.

Tex.R.App. P. 25.2(a)-(b).

██ In *Villanueva*, we held that to invoke this court's jurisdiction over an appeal from a negotiated guilty plea, a notice of appeal must conform to the mandatory notice requirements of rule 25.2(b)(3). *Villanueva*, 977 S.W.2d at 695; *see also* Tex.R.App. P. 25.2(b)(3); *Hulshouser v. State*, 967 S.W.2d 866, 868 (Tex.App.— Fort Worth 1998, pet. ref'd, untimely filed); *Williams v. State*, 962 S.W.2d 703, 704–05 (Tex.App.—Fort Worth 1998, no pet.) (op. on PDR). We further concluded that these requirements must be met to challenge the voluntariness of a plea. *Villanueva*, 977 S.W.2d at 696; *see also Northington v. State*, 43 S.W.3d 546, 548 (Tex.App.—Fort Worth 2001, pet. filed). Moreover, the court of criminal appeals has recently resolved the long-standing division on the voluntariness issue and held that in a plea-bargained, felony case, rule

25.2(b)(3) does not permit the voluntariness of the plea to be raised on appeal. *Cooper v. State*, 45 S.W.3d 77, 87 (Tex. Crim.App.2001).

In the instant case, appellant's guilty plea was the result of a plea bargain in which he bargained for and received deferred adjudication. Thus, appellant was required to comply with the extra-notice requirements of rule 25.2(b)(3). *See Watson v. State*, 924 S.W.2d 711, 714–15 (Tex. Crim.App.1996) (applying former rule 40(b)(1)); *Hulshouser*, 967 S.W.2d at 868; *Williams*, 962 S.W.2d at 704–05. His failure to do so deprives this court of jurisdiction over the appeal.

■ Further, appellant's attempt to cure the defect by filing an amended notice of appeal 190 days after his judgment of conviction is of no effect. In *Riewe*, the court of criminal appeals held that the State, as appellant, did not invoke the jurisdiction of the court of appeals by its original notice of appeal, because the notice did not contain two statutorily required certifications that (1) the appeal was not taken for delay and (2) the evidence suppressed by the trial court was of "substantial importance" in the case. *Riewe*, 13 S.W.3d at 411–13.[1] The court further held that, because the original notice did not confer jurisdiction on the court of appeals, an amended notice of appeal filed by the State pursuant to rule 25.2(d), which did contain the previously omitted certifications, could not retroactively confer jurisdiction on the court of appeals.[2] *Id.* at 413. Specifically, the court said:

It is true that Rule 25.2(d) allows an amendment to a notice of appeal. But when the Legislature granted this Court rule-making authority, it expressly provided that the rules could not abridge, enlarge or modify the substantive rights of a litigant. *And our case law prevents a court of appeals from using an appellate rule to create jurisdiction where none exists.* It does not matter which appellate rule the court of appeals attempts to use, be it former Rule 83, former Rule 2(b), or current Rule 25.2(d). *The point is that, once jurisdiction is lost, the court of appeals lacks the power to invoke any rule to thereafter obtain jurisdiction.* Even a claimed deprivation of constitutional rights cannot confer jurisdiction upon a court where none exists, anymore than parties can by agreement confer jurisdiction upon a court. *So any amendments made pursuant to Rule 25.2(d) cannot be jurisdictional amendments.*

*Id.* at 413–14 (emphasis added) (footnotes omitted).

■ According to *Riewe*, the only amendments permitted under rule 25.2(d) are nonjurisdictional amendments. The amendments appellant must make to his notice of appeal are jurisdictional amendments. *Villanueva*, 977 S.W.2d at 695–96; *see also Davis v. State*, 870 S.W.2d 43, 46–47 (Tex.Crim.App.1994) (holding that notice requirements under former rule

---

1. Where the State is the appellant, both certifications are required by article 44.01 of the Texas Code of Criminal Procedure. Tex.Code Crim. Proc. Ann. art. 44.01(a)(5) (Vernon Supp. 2001); *Riewe*, 13 S.W.3d at 411–14. Compliance by the State with article 44.01 is also expressly required and referenced by current appellate rule 25.2(b)(2). Tex.R.App. P. 25.2(b)(2).

2. Prior to adoption of rule 25.2(d), the court of criminal appeals had similarly held that former rule 83 of the Texas Rules of Appellate Procedure, which generally allowed a reasonable time to correct or amend any defects or irregularities in appellate procedure, did not apply to cure a general notice of appeal that did not comply with former rule 40(b)(1). *See Jones v. State*, 796 S.W.2d 183, 186–87 (Tex. Crim.App.1990).

40(b)(1) are jurisdictional); *Craddock v. State*, 32 S.W.3d 886, 887 (Tex.App.—Waco 2000, no pet.) (holding that notice requirements under rule 25.2(b)(3) are jurisdictional). Because appellant's original notice did not initially confer jurisdiction on this court, we now have no power to accept an amended notice to obtain jurisdiction retroactively. *See Riewe*, 13 S.W.3d at 413–14; *Cohen v. State*, 41 S.W.3d 223, 227–28 (Tex.App.—Fort Worth 2001, no pet.); *Salgado v. State*, 36 S.W.3d 911, 912 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (op. on reh'g); *Craddock*, 32 S.W.3d at 887; *Robinson v. State*, 24 S.W.3d 438, 439 (Tex.App.—Houston [1st Dist.] 2000, pet. ref'd); *Happ v. State*, 958 S.W.2d 474, 475 (Tex.App.—Fort Worth 1997, no pet.).[3]

Finally, counsel proposes that we follow the supreme court's ruling in *Verburgt v. Dorner*, 959 S.W.2d 615, 616 (Tex.1997), that a bona fide attempt to invoke the jurisdiction of the court of appeals is sufficient to establish the appellate court's jurisdiction over the case. The court of criminal appeals, however, has specifically held that, in criminal cases, jurisdiction cannot be substantially invoked; it either attaches or it does not. *Olivo*, 918 S.W.2d at 525. If a criminal defendant wishes to appeal following a negotiated plea, the notice of appeal must comply with the requirements of rule 25.2(b)(3). *See id.* at 524 (applying former rule 40(b)(1)). We are constrained by the rules and controlling authority of

the court of criminal appeals on this matter.

## CONCLUSION

We conclude that appellant's original notice of appeal fails to invoke the jurisdiction of this court and that we have no power to permit him to amend his notice to confer jurisdiction on this court retroactively. Accordingly, we grant the State's December 1, 2000 motion and dismiss the appeal for want of jurisdiction.

DAUPHINOT, J. filed a concurring opinion.

DAUPHINOT, Justice, concurring.

## INTRODUCTION

The unique facts of this case are a cause for concern. Appellant plea-bargained for deferred adjudication community supervision. Unknown to Appellant and his counsel, however, the community supervision department had been instructed to contact the Immigration and Naturalization Service (INS) to report that Appellant was not a citizen of the United States.

Scott Ray, the testifying community supervision officer, identified Defendant's Exhibit 3 as "the rules that our department must undergo according to Texas Department of Criminal Justice CJAD division." He described it as "a section of our departmental policy and procedures specifically regarding our relationship to

---

**3.** We have recently held that a notice of appeal substantially complies with rule 25.2(b)(3) and therefore invokes our jurisdiction if the notice is timely filed and the information required to be specified in the notice is contained elsewhere in the clerk's record. *Finch v. State*, Nos. 2–00–414—416–CR, slip op. at 4, 2001 WL 253441, at *4, —— S.W.3d ——, —— (Tex.App.—Fort Worth, Mar.15, 2001, no pet.) (trial court's permission to appeal); *Ramirez v. State*, No. 2–00–378–CR, slip op. at 8, 2001 WL 173199, at *3, ——

S.W.3d ——, —— (Tex.App.—Fort Worth Feb.21, 2001, no pet.) (op. on PDR) (jurisdictional defect). There is no timely substantial compliance here, however, because the trial court's order granting permission to appeal was not signed until six months after the judgment was signed. Because e order granting permission to appeal was not signed within the time period for filing appellant's notice of appeal, appellant cannot rely on it to invoke our jurisdiction.

Immigration and Naturalization Service." The community supervision office is required to fax a copy of the pre/post sentence investigation cover sheet to INS within one week for any defendant not born within the United States. The community supervision office is admonished to cooperate with INS in performing INS's job.

Exhibit 3 also provides, "If the probationer was deported, the supervision officer will submit an ROV [report of violation] and will change the case status to Indirect (I) and the supervision level to DPRT." It is then up the individual trial judge to decide whether the community supervision department files a motion to revoke probation. The record does not reflect whether the violation, which is the basis of the petitions to revoke or to adjudicate, is leaving the county without permission, failing to report, or being deported. Most courts, although the trial court in which Appellant entered his plea is an exception, "file [sic] those motions to revoke after three months . . . ."

In the case before us, the Tarrant County Community Supervision Department immediately contacted INS because Appellant was not born in the United States. One day after Appellant entered his plea, INS seized and deported him, depriving him of his ability to participate in the hearing on his motion for a new trial. Equally important, these actions made it impossible for Appellant to comply with the conditions of community supervision. The community supervision officer testified that the judges of the Tarrant County criminal district courts had authorized the community supervision department to make such reports to INS.

This record raises questions of due process and equal protection, a question of whether the plea bargain was breached, a question of the voluntariness of the plea, and a question of whether a trial judge has become an adversary to a noncitizen defendant when the trial judge may believe federal law requires judges to act as agents of INS. Yet, Appellant appears to have no vehicle for invoking a direct appellate review of these quite serious questions, and is entitled to neither record nor counsel for the purpose of preparing an application for writ of habeas corpus. Indeed, under these circumstances, I do not understand how Appellant could avail himself of habeas corpus relief.

In holding that an appellant may not raise voluntariness on direct appeal unless he raised the issue by pretrial motion or the trial judge has granted permission to appeal, the court of criminal appeals stated in *Cooper v. State,*

When we actually consider the issue of whether voluntariness of a guilty plea may be raised on appeal from a plea-bargained, felony conviction, we find that the answer must be that it may not. The first two reasons have been set out above: The legislature forbade it in 1977, and to do so would completely frustrate the statute. Our rule-making authority does not extend to enlarging the right of appeal in this fashion . . . .

Two other reasons support the legislative decision to forbid appeals of voluntariness in such cases. One is a cost-benefit analysis. The number of plea-bargain, felony cases in which a plea was entered involuntarily is very small, compared to the large number of meritless appeals that would be authorized.[1]

The court further explained,

The number of cases in which the plea is involuntary when the trial court followed the plea agreement is therefore

---

1. *Cooper v. State,* 45 S.W.3d 77, 81 (Tex.Crim. App.2001).

very small, and the number of cases in which the involuntariness would appear in an appellate record is even smaller. Experience has shown us that most cases of involuntary pleas result from circumstances that existed outside the record, such as misunderstandings, erroneous information, impaired judgment, ineffective assistance of counsel, and plea-bargains that were not followed or turn out to be impossible of performance. The legislature reasonably determined to eliminate a small number of meritorious appeals to prevent a much larger number of meritless appeals.

*This decision may be seen as even more reasonable when it is remembered that meritorious claims of involuntary pleas may be raised by other procedures: motion for new trial and habeas corpus.* These procedures are not only adequate to resolve claims of involuntary pleas, but they are superior to an appeal in that the claim may be supported by information from sources broader than the appellate record. (emphasis added) (citations omitted) [2]

A defendant who challenges the voluntariness of his plea must do so within the appellate timetable for direct appeal and may not raise voluntariness after revocation or adjudication.[3] But a defendant who is placed on probation may not challenge the voluntariness of his plea by way of an 11.07 writ unless his probation has been revoked or, if adjudication of guilt was deferred, until his guilt has been adjudicated.[4] While article V, section 5 of the Texas Constitution may provide for habeas relief, how can Appellant show that he is unlawfully restrained of his liberty and that the Texas court has jurisdiction if he has been deported from the United States? Must he wait until he attempts an illegal entry since he cannot enter legally because of the felony probation, which is not a conviction under state law but is a conviction under federal immigration law?

Appellant in this case did file a motion for new trial. Does the court of criminal appeals intend to instruct us that, because he filed the motion for new trial, Appellant can appeal its denial outside the strictures of Rule 25.2(b)(3)?[5] The court states, "This decision may be seen as even more reasonable when it is remembered that meritorious claims of involuntary pleas may be raised by other procedures: motion for new trial and habeas corpus."[6]

Inherent in the concept of a "plea" is the notion that it be freely and voluntarily entered.[7] Indeed, a trial court may not accept a plea of guilty or nolo contendere unless it is knowing and voluntary.[8] Here,

---

2. *Id.*, 45 S.W.3d at 82.

3. *Daniels v. State*, 30 S.W.3d 407, 408 (Tex. Crim.App.2000) (citing *Manuel v. State*, 994 S.W.2d 658, 661–62 (Tex.Crim.App.1999) (holding a defendant placed on deferred adjudication has to appeal issues relating to the original deferred adjudication proceeding when deferred adjudication is first imposed)).

4. Tex.Code Crim. Proc. Ann. art. 11.07 (Vernon Supp.2001); *Ex parte Chappell*, 959 S.W.2d 627, 628 (Tex.Crim.App.1998); *Ex parte Payne*, 618 S.W.2d 380, 381 (Tex.Crim.App. 1981) (holding that because applicant was placed on probation in theft case and such probation was never revoked, that conviction is not "final" and may not be challenged under article 11.07).

5. Tex.R.App. P. 25.2(b)(3).

6. *Cooper*, 45 S.W.3d at 82.

7. *George v. State*, 20 S.W.3d 130, 133 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd); *Session v. State*, 978 S.W.2d 289, 291 (Tex. App.—Texarkana 1998, no pet.); *Johnson v. State*, 978 S.W.2d 744, 745–46 (Tex.App.— Eastland 1998, no pet.).

8. Tex.Code Crim. Proc Ann. art. 26.13(b) (Vernon 1989); *Flowers v. State*, 935 S.W.2d 131, 133–34 (Tex.Crim.App.1996).

Appellant contends the trial court failed to inform him at the time he entered his plea that, as a matter of procedure, the community supervision department would contact INS regarding his citizenship status. Appellant argues that had he known that immediate deportation would result, he would never have pled guilty. Therefore, according to Appellant, his plea was not knowing or voluntary, and consequently should be set aside.

But Appellant apparently has no vehicle for seeking redress. If he waits until his guilt is adjudicated, he has waited until too late. The conscientious trial judge recognized Appellant's absence from the hearing on the motion for new trial was involuntary. He allowed the hearing to proceed without Appellant's presence because to do otherwise "would deny him procedural appeal guaranteed by both the statutes of [sic] the Constitution and the State of Texas . . . ." The trial·judge also granted Appellant's motion to arrest terms of probation pending issuance of mandate. He intended that Appellant be allowed an avenue of redress by granting permission to appeal. A different trial judge might have denied permission. To require permission of the trial judge to seek relief from an involuntary plea subjugates any defendant's due process and equal protection rights to the good will of the trial judge.

Judges may not rewrite laws the legislature has enacted. But we are also bound by the same oath to preserve the mantle of constitutional safeguards for both citizen and noncitizen alike. Because of the court's holding in *Cooper*, however, I have no choice but to concur in the outcome the majority reaches.

