TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-06-00306-CR






Douglas Kelly Pye, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT

NO. 05-547-K26, HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING




M E M O R A N D U M O P I N I O N



 Appellant Douglas Kelly Pye appeals his state jail felony conviction for forgery. See
Tex. Penal Code Ann. § 22.21 (West Supp. 2008). The jury found appellant guilty and the trial court
assessed punishment at one year's imprisonment.


POINTS OF ERROR

 Appellant advances five points of error, four of which allege the trial court erred
in overruling his motion for new trial. First, appellant asserts the trial court erred in failing to
grant a new trial on the basis of ineffective assistance of counsel because counsel did not "view"
the presentence report forty-eight hours before the hearing concerning the presentence report. 
Alternatively, appellant claims counsel failed to object to the presentence report, failed to prepare
appellant to respond in court to the presentence report, and interrupted appellant during his response
at the hearing.

 Second, appellant urges error in the overruling of the new trial motion because
counsel was ineffective when he gave erroneous legal advice that appellant had a meritorious
"defense" of a lack of intent to defraud or harm the complainant. It is claimed that this led appellant
to make statements in the presentence interview and later in court that were characterized as a
"minimization of guilt," resulting in the rejection of a plea bargain agreement.

 Third, error is again urged in the overruling of the new trial motion because appellant
was deprived of counsel at a critical stage of the proceedings resulting from the district attorney's
disclosure to appellant's counsel of the disparaging remarks made about counsel by appellant in
recorded jail telephone conversations.

 Fourth, appellant argues that a new trial should have been granted because the
trial court abused its discretion at the new trial hearing by admitting into evidence "eleventh hour"
affidavits offered by the State on the last day before the motion for new trial was overruled by
operation of law.

 Fifth and last, appellant contends that the trial court erred in failing to follow a plea
bargain agreement for deferred adjudication because (1) appellant did not minimize his guilt in the
presentence report, or (2) the trial court had accepted the guilt plea and plea bargain agreement prior
to requesting a presentence report. We will affirm the judgment of conviction.


FACTUAL BACKGROUND

 Appellant does not challenge the legal or factual sufficiency of the evidence to sustain
the conviction. A recitation of the facts and the procedure utilized will place the points of error in
proper perspective. In January 2005, appellant Pye and Dustin Almazan were both employees at
the Mac Haik Ford automobile dealership in Georgetown. Appellant had assisted Almazan, his
"cousin-in-law," in obtaining employment there about a year earlier. Sometime in January 2005,
Almazan's employment was terminated, apparently for failing to meet his sales quota. The Haik
dealership "cut" Almazan's termination check in the amount of $59.80 and placed the check in
a drawer in the "sales tower" of the dealership for Almazan. The record reflects that appellant
obtained the Almazan check, forged Almazan's name, and cashed the check at a food mart. This
was done without the knowledge, consent, or permission of Almazan. When Almazan inquired
about the check, the dealership learned that the check had been cashed. Another check was issued
to Almazan by the dealership, and the agency's bank took the loss after Almazan filed a forgery
affidavit. When Almazan was at the Georgetown police station, he received a telephone call from
appellant. Almazan returned the call on a police telephone and the conversation was recorded. In
the conversation, appellant admitted to having cashed the check without permission by signing
Almazan's name.

 John Tirella, inventory manager of the Haik dealership, investigated the missing
check. Tirella talked to appellant, who, in an admission against interest, stated to Tirella that he
(appellant) had taken the check and cashed it. Detective Ronald Price testified as to the filing of
charges against appellant on February 16, 2005, and the recorded telephone conversation between
Almazan and appellant.

 Throughout the record, there was testimony about a "spin" check issued by the Ford
Motor Company to a salesman who had sold a certain type of vehicle as an additional commission. 
The "spin" checks in these cases were always issued only in the name of the first salesman on
the list because the federal income tax form 1099 was sent to that individual. If two or more
salesmen were involved in a sale, they could agree how to split the "spin" check made out to the first
name on the list. If a dispute arose, the Haik dealership encouraged a settlement but did not enforce
agreements. It appears that in January 2005, Almazan received an $82.50 "spin" check for the sale
of a Lincoln Navigator. Defense exhibit No. 2, a Haik dealership document, was introduced at trial. 
It reflected that the salesmen listed on the sale of the Lincoln Navigator were "Almazan, Dustin" and
"Pye, Douglas," in that order.

 John Tirella testified that when he questioned appellant about the matter, appellant
simply stated that he had made "a mistake and messed up." Appellant made no claim to Tirella that
Almazan intended to share the "spin" check of $82.50 with him (appellant). Tirella further testified
that he did not know of any agreement between Almazan and appellant about the sale of the
Lincoln automobile.

 Dustin Almazan testified that he repeatedly called the Haik dealership about
his termination check of $59.80 and was finally told that it had been cashed. Almazan filed a
forgery affidavit and went to the Georgetown police department. In two or three earlier telephone
conversations with appellant, no mention was made to Almazan that appellant had any knowledge
of the cashed check. According to Almazan, it was not until the telephone conversation recorded
by the police that he learned appellant had taken the check and cashed it.

 Almazan revealed that appellant came to the site of Almazan's new job in Temple
and put $60.00 in cash on the desk. Almazan refused to accept the money. Almazan placed the
money in a desk drawer and left that employment two days later. As far as he knew, the money was
still in the drawer. Almazan testified that appellant was trying to get him to drop the case. Almazan
related that he had earlier received the "spin" check for the sale of a Lincoln automobile, which was
issued solely to him, although appellant was also listed as a salesman on the dealership records. He
admitted having an ongoing dispute with appellant about sharing the "spin" check, but had finally
decided not to share. He had not shared any other "spin" checks that he had received.

 Appellant did not testify at the guilt/innocence stage of the trial before the jury, but
did testify at the penalty stage of the trial before the trial court.


PROCEDURAL BACKGROUND

 On May 31, 2005, appellant was indicted on two counts of forgery. On February 6,
2006, appellant, represented by retained counsel, waived trial by jury and entered a plea of guilty
before the trial court to the first count of the indictment charging a state jail felony. The State
offered a "one day only" plea bargain offer, to which appellant and his counsel agreed. The plea
bargain agreement called for a punishment of four years of deferred adjudication supervision
(probation), a $2,500 fine, and thirty days in jail with jail credit for time in confinement. Appellant
was duly admonished of the consequences of his guilty plea and the trial court was made aware of
the plea bargain. Appellant made a judicial confession after which the trial court examined appellant
as to the plea bargain. The record then reflects:


 The Court: Mr. Pye. I accept your plea. I find the evidence substantiates your
guilt, but I do not find you guilty at this time.



 The cause was recessed to await the preparation of the presentence report and to then
determine whether the plea bargain agreement was to be accepted.

 The case was recalled on March 23, 2006. In a somewhat informal manner, the
trial court established appellant's identity and what had earlier transpired in the case; then, skipping
over appellant's prior criminal record, the trial court directed questions personally to appellant
raising an issue as to whether appellant was denying his guilt. Appellant acknowledged the truth of
the statements in the presentence report that he had a "stupid, crazy idea" to cash the check so it
could be easily divided, with the intent to give Almazan an opportunity to pay appellant the
forty dollars owed him from the sharing of the "spin" check. Appellant agreed that he had also told
the probation interviewer that he had no intent to defraud or harm anyone. Appellant's counsel
tried to modify appellant's statements and his admission that he was only guilty of a part of the
allegations in the indictment. The prosecutor then raised questions about proceeding with the plea
bargain. The trial court rejected the plea agreement of deferred adjudication and ordered the case
set for a jury trial. There were no objections to the trial court's actions.

 The jury trial on appellant's plea of not guilty commenced on May 1, 2006, this
time on the second count of the indictment. The first count was waived and abandoned by the State. 
After the jury found appellant guilty, the trial court conducted a penalty hearing. Appellant testified
that he was disappointed in the jury's verdict, but his intent was to give Almazan the opportunity
to repay him the money owed. He explained that he did not intend to keep the money if there was
a dispute. He agreed that his testimony was the same as revealed to the probation officer for
the purposes of the PSI. The trial court cited appellant's testimony regarding "thinking errors" in
assessing a one year state jail felony punishment instead of probation. Sentence was imposed on
May 2, 2006.


MOTION FOR NEW TRIAL

 In points of error one and two, appellant urges that the trial court erred in overruling
the motion for new trial, which included separate claims of ineffective assistance of counsel. The
claims are related to counsel's conduct prior to the jury trial which resulted in appellant's conviction
and in which appellant was represented by same counsel (Robert Phillips) or counsel of the same
law firm (Mark Brunner). We shall begin with the law applicable to the hearing on the motion
for new trial and the claims for the ineffective assistance of counsel.


STANDARD OF REVIEW

 An appellate court reviews a trial court's denial of a motion for new trial under
an abuse of discretion standard. Charles v. State, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004);
Salazar v. State, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001). At a hearing on a motion for
new trial, the trial court is the trier of fact and the sole judge of the credibility of the witnesses. 
Lewis v. State, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995); Woodall v. State, 77 S.W.3d
388, 393 (Tex. App.--Fort Worth 2002, pet. ref'd); George v. State, 20 S.W.3d 130, 135
(Tex. App.--Houston [14th Dist.] 2000, pet. ref'd). Its findings should not be disturbed unless an
abuse of discretion has been demonstrated. Tollett v. State, 799 S.W.2d 256, 259 (Tex. Crim. App.
1990). We view the evidence in the light most favorable to the trial court's ruling on the new trial
motion and presume that all reasonable factual findings that could have been made against the losing
party were made against the losing party. Charles, 146 S.W.3d at 208. We do not substitute our
judgment for that of the trial court, but rather decide whether the trial court's decision was arbitrary
or unreasonable. Holden v. State, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006). The trial court
abuses its discretion in denying a motion for new trial only when no reasonable view of the record
would support the trial court's ruling. Webb v. State, 232 S.W.3d 109, 113 (Tex. Crim. App. 2007);
Holden, 201 S.W.3d at 763.


A REVIEW OF THE LAW--COUNSEL'S INEFFECTIVE ASSISTANCE

 Appellant contends that the trial court erred in overruling the motion for new
trial by rejecting his allegations as to the ineffective assistance of trial counsel. We first examine
the applicable law by quoting from Lopez v. State, 96 S.W.3d 406 (Tex. App.--Austin 2002,
pet. ref'd):


 A defendant in a criminal case has a constitutional right to the reasonably effective
assistance of counsel. Stafford v. State, 813 S.W.2d 503, 506 (Tex. Crim. App.
1991). However, a defendant is not entitled to errorless counsel or counsel whose
competency is judged by hindsight. Id. In Strickland v. Washington, 466 U.S. 668,
687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court
promulgated a two-pronged test to determine whether representation was so
inadequate that it violated a defendant's Sixth Amendment right to counsel. The
Strickland analysis has been adopted in Texas and applies to claims arising under
article one, section ten of the Texas Constitution. Hernandez v. State, 726 S.W.2d
53, 57 (Tex. Crim. App. 1986). Under the two-pronged test, a convicted defendant
must first show that his counsel's performance was deficient, and second, show
that the deficient performance prejudiced the defense. Strickland, 466 U.S. at 687;
Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). The defendant has
the burden to prove a claim of ineffective assistance of counsel by a preponderance
of the evidence. McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996). 
If the defendant fails to make the required showing of both deficient performance and
prejudice, his claim must fall. Id.


 The review of a claim of ineffective assistance of counsel is highly deferential. 
Strickland, 466 U.S. at 689. A reviewing court must indulge a strong presumption
that trial counsel's conduct falls within a wide range of reasonable representation. 
McFarland, 928 S.W.2d at 500. The assessment of whether a defendant received
effective assistance of counsel must be made according to the facts of each case. We
assess the totality of counsel's representation rather than his or her isolated acts
or omissions. Strickland, 466 U.S. at 689. Oestrick v. State, 939 S.W.2d 232, 239
(Tex. App.--Austin 1997, pet. ref'd). While a single egregious error of commission
or omission may be sufficient, reviewing courts generally are hesitant to declare
counsel ineffective based on a single alleged miscalculation. Thompson v State,
9 S.W.3d 808, 813, 814 (Tex. Crim. App. 1999).



Id. at 416-17.



POINT OF ERROR TWO

 We turn first to point of error two which states:


 A new trial should have been granted because Mr. Pye was denied effective
assistance of counsel when he was given erroneous legal advice by his trial attorneys
that he had a meritorious defense of lack of intent to harm or defraud the
complainant, which resulted in the statements made in the PSI which were
erroneously characterized as a minimization of guilt, as well as a much stiffer
sentence than that contemplated by the plea agreement.



 Both counts of the indictment were drafted under the provisions of section 32.21. 
Tex. Penal Code Ann. § 32.21 (West Supp. 2008). Subsection (b) of section 32.21 provides: "a
person commits an offense if he forges a writing with intent to defraud or harm another." "Another"
is defined as "a person other than the actor." Id. § 1.07(a)(5) (West Supp. 2008). In both counts
of the indictment, the name of the complainant, Dustin Almazan, was alleged as the person
appellant had the intent to defraud or harm. (1) The State chose to specifically allege the name of the
complainant rather than "another."

 Appellant's affidavit, admitted at the hearing on the motion for new trial, reflects that
after discussing an "open plea" of guilty strategy, he and attorney Phillips turned to discussing a
contested jury trial. Phillips then told appellant that appellant "could win the case" with an emphasis
on "could" if the State failed to prove appellant had an intent to defraud or harm his "cousin-in-law"
Almazan. Phillips felt that while much of the evidence was damaging, appellant had a "defense" (2)
on the "intent" issue. Subsequently, the record shows that appellant accepted a plea bargain and
entered a guilty plea to the first count of the indictment. During the proceedings, upon interrogation
by attorney Phillips, appellant testified that he was pleading guilty of his own free will; that he was
knowingly foregoing any potential "defense" on the intent issue; and that he had willingly accepted
the plea bargain agreement. (3)

 It appears that appellant is contending that his trial counsel's advice about a "defense"
led him to make statements about his lack of intent to the probation officer and to the trial court,
which were later characterized as a "minimization of guilt" statements, resulting in the rejection
of the plea bargain and a "stiffer" sentence following the subsequent jury trial.

 The State has the burden to prove each element of the offense beyond a reasonable
doubt. Vantil v. State, 884 S.W.2d 212, 214 (Tex. App.--Fort Worth 1994, no pet.). The State,
being bound by its allegations in the indictment, must prove them beyond a reasonable doubt. Butler
v. State, 429 S.W.2d 497, 502 (Tex. Crim. App. 1968). Trial counsel's evaluation of appellant's
case that appellant had a potential "defense" if the State failed to prove beyond a reasonable doubt
the essential element of "intent" appears to be correct, not erroneous as claimed by appellant.

 Appellant, however, takes a different tact and relies upon Pierce v. State, 113 S.W.3d
431 (Tex. App.--Texarkana 2003, pet. ref'd), which was extant at the time of his proceedings and of
which he claims his counsel was unaware. Appellant asserts that Pierce holds that if the State fails
to prove in a forgery case an intent to defraud or harm a particular person, the evidence is still
sufficient if it simply shows an intent to defraud or harm "another." Therefore, appellant urges that
his trial counsel's advice about a "defense" was erroneous in this case.

 The defendant Pierce was on probation after being convicted of "theft by worthless
check." The State sought to revoke probation based on a violation of a probationary condition not
to commit an offense against the law. The revocation motion alleged, in pertinent part, that Pierce
"did then and there with the intent to defraud or harm another, make a writing that purported to be
the act of A. K. Bobbitt, who did not authorize the act."

 The facts were not set out in any great detail in the Pierce opinion. It appears that
Bobbitt gave a $160 check to the defendant's employer for services rendered. The payee line on
the check was left blank. Pierce entered her name as payee, endorsed the check, and cashed it at
a local convenience store. Pierce, 113 S.W.3d at 435. At the revocation hearing, Pierce claimed
her employer had instructed her to make the check payable to herself and use the money to buy office
supplies. In disposing of the sufficiency of evidence question, the Texarkana Court noted:


 For the sake of completeness, we also note Pierce's contention, embedded within this
point of error, that the evidence failed to show she acted with the intent to defraud
Mr. and Mrs. Bobbitt. Such a showing was not necessary. The requisite intent to
defraud is directed at "another." Tex. Code Crim. Proc. Ann. art. 38.19 (Vernon
1979). The Texas Penal Code defines "another" as "a person other than the actor." 
Tex. Penal Code Ann. § 1.07(a)(5) (Vernon 2003). Here, Mrs. Bobbitt testified the
check was given as payment for services by Pierce's employer, and the employer
testified to the same. Having rendered services and not having received payment for
those services, the employee suffered harm sufficient to satisfy the forgery statute.



Id. at 436 n.2.

 Pierce is distinguishable from the instant case both on the facts and the law. In
Pierce, the allegation in the revocation motion was "an intent to defraud or harm another," not
a particular person as in the instant indictment. A motion to revoke probation need not meet the
specificity requirement of an indictment or information. Charcon v. State, 558 S.W.2d 874, 876
(Tex. Crim. App. 1977); Tamez v. State, 534 S.W.2d 686, 689 (Tex. Crim. App. 1976). The State
need not, in a motion to revoke probation, use the same precise terms as necessary in an indictment
allegation. Bradley v. State, 608 S.W.2d 652, 655 (Tex. Crim. App. 1980). Moreover, the burden
of proof in a revocation of probation proceeding is by a preponderance of evidence. Scamardo
v. State, 517 S.W.2d 293, 298 (Tex. Crim. App. 1974). In a criminal trial, no person may
be convicted of an offense unless each element of the offense as alleged is proved beyond a
reasonable doubt. See Tex. Penal Code Ann. § 2.01 (West 2003). The instant indictment alleged
"Dustin Almazan" as the person appellant had the intent to defraud or harm, while the revocation
motion in Pierce simply alleged the statutory "another."

 Other than holding the evidence was sufficient to revoke probation, the real meaning
of the Pierce court in its footnote is not altogether clear. The court noted that it was the defendant's
contention that the evidence was insufficient to show her intent to defraud or harm the Bobbitts. 
Rather than discuss that contention, the court, in effect, observed that "another" had been alleged in
the revocation motion, and that the defendant's employer had been shown to be harmed. We will
not pause to examine all potential meanings or possible options under the Pierce footnote. We do
not ascribe, however, to the meaning of Pierce as urged by appellant. Here, a specific person was
named in the indictment as the complainant. Furthermore, Pierce is not binding on this Court. See
Delamora v. State, 128 S.W.3d 344, 359 (Tex. App.--Austin 2004, pet. ref'd) (court of appeals is
not bound by decision of another court of appeals).

 At the guilty plea proceedings, appellant acknowledged under oath that he was
pleading guilty freely and voluntarily and that he was foregoing any potential defenses. Appellant
is in no position to fault his counsel's earlier advice for his own bungled statements in the
presentence interview and to the trial court.

 A defendant is not entitled to errorless counsel or counsel whose competency is
judged by hindsight. Stafford, 813 S.W.2d at 506. We assay the totality of counsel's representation
rather than isolated acts or omissions. Strickland, 466 U.S. at 689. Here, appellant has failed to
establish either prong of the Strickland standard. McFarland, 928 S.W.2d at 500. The trial court
did not abuse its discretion in overruling the motion for new trial on the basis of ineffective
assistance of counsel as advanced in the second point of error.


POINT OF ERROR ONE

 As with the second point of error, appellant complains that the trial court erred in
overruling the motion for new trial based on the claim of ineffective assistance of counsel. The first
point, in a multifarious vein, states:


 A new trial should have been granted because appellant's trial counsel failed to ask
to view the PSI at least 48 hours before the March 2006 sentencing hearing pursuant
to statute, and appellant did not affirmatively waive this requirement. Alternatively,
trial counsel was ineffective, with the resulting harm being that objections were not
made to portions of the PSI, appellant was inadequately prepared to respond to
portions of the PSI, and appellant was interrupted by his trial counsel when
responding, all of which led to the case not being resolved at the plea hearing, with
the result being a one year state jail sentence, instead of the plea recommendation of
four years deferred adjudication probation.



 Appellant relies in his brief upon article 42.12, section 9(d) of the code of criminal
procedure, which provides: "Unless waived by the defendant at least 48 hours before sentencing
a defendant, the judge shall permit the defendant or his counsel to read the presentence report." 
Tex. Code Crim. Proc. Ann. art. 42.12, § 9(d) (West Supp. 2008) (emphasis added).

 Appellant's contention of a lack of statutory compliance was not raised at trial, in
the motion for new trial, or at the hearing on said motion. A complaint on appeal must comport
with the trial objection. Rezac v. State, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990). A trial court
can hardly be faulted for not ruling on a matter raised for the first time on appeal.

 In his motion for new trial, appellant did advance a related contention. He urged that
his trial counsel failed to permit him to read the presentence report or advise him of the contents
"prior to the day of sentencing." All of this was rebutted by appellant's own affidavit that he had
read the report in court prior to the hearing on March 23, 2006, and had then conversed with
his attorney about the report. It is further contradicted by the record reflecting his remarks to the
trial court that his statements in the presentence report were accurate. More importantly, there was
no sentencing on March 23, 2006. (4) Sentence was pronounced on May 2, 2006, after a jury trial.

 Continuing to argue his first point of error, appellant claims his counsel was
ineffective because counsel did not object to portions of the presentence report. Appellant does not
tell us what portions of the report that he has in mind or the basis of any proper objection that could
have been made. The mere assertion of error and the failure to brief the question presents nothing
for review. The same is true of appellant's simple assertion that he was not adequately prepared
by counsel to respond to undesignated portions of the report.

 Appellant further complains that counsel interrupted his response to the presentence
report before the trial court. Appellant does not direct our attention to the record indicating where
and how counsel interrupted him. Our examination reveals no interruption. Counsel did hand a
copy of the indictment to the trial court and tried to clarify appellant's remarks while acting on
appellant's behalf. The record does not support appellant's contention.


 Appellant did not sustain his burden of proof to meet the two-pronged test of
Strickland. Thus, the trial court did not abuse its discretion in overruling the motion for new trial
as claimed in the first point of error, which is overruled.


A CRITICAL STAGE WITHOUT COUNSEL?

 In point of error three, appellant asserts that a "new trial should have been granted
because appellant's right to the effective assistance of counsel in preparing a motion for new
trial was interfered with by the District Attorney's office's disclosure to trial counsel of allegedly
disparaging phone calls which caused counsel to abandon appellant during the bulk of this
critical period."

 The thrust of appellant's argument is that he was denied counsel for twenty-one of
the thirty days permitted by law in which to file a motion for new trial after the imposition of
the sentence in open court. See Tex. R. App. P. 21.4(a). Appellant seeks an entirely new trial for
a post-trial occurrence. He recognizes that his trial counsel formally withdrew and substitute counsel
entered the case before the expiration of the thirty-day period.

 Appellant was sentenced on May 2, 2006, with his retained trial counsel present. (5) On
May 17, 2006, appellant's retained trial attorney sent appellant a letter terminating his representation
of appellant, not on the basis of any contract term, but because of information Phillips had "learned
from the District Attorney's office." Phillips informed appellant that recorded jail telephone
conversations reflected that appellant had stated, in telephone conversations with his family, that the
Phillips law firm "took a dive" and purposely lost appellant's case. Phillips also informed appellant
that Phillips had learned that appellant's mother was tape-recording telephone calls with his law
firm. A copy of Phillips's motion to withdraw as counsel was enclosed. Appellant was advised to
retain other counsel and informed that June 1, 2006, was the last day to give notice of appeal.

 The motion to withdraw as counsel was filed on May 18, 2006. On May 23, 2006,
at a hearing in open court, the Phillips law firm was permitted by the trial court to withdraw as
counsel with the express approval of appellant. Newly retained counsel, Gregory Sherwood, was
substituted as appellant's new appellate counsel. On that date, appellant, represented by Sherwood,
gave notice of appeal. The trial court set a $25,000 appeal bond for appellant, which was executed
the next day. On May 31, 2006, a timely motion for new trial was filed by Sherwood, attaching
affidavits and Phillips's letter.

 We turn now to whether the period of time in which to file a motion for new trial is
a critical stage of the proceedings requiring the assistance of counsel.

 An accused is entitled to the assistance of counsel under the Sixth Amendment
of the United States Constitution at "every critical stage of the proceedings" where the adversial
proceedings have begun, absent a valid waiver of the right to counsel. See Upton v. State,
853 S.W.2d 548, 553 (Tex. Crim. App. 1993); Garcia v. State, 97 S.W.3d 343, 347
(Tex. App.--Austin 2003, no pet.). Whether a particular stage is critical turns on the assessment of
the usefulness of counsel to the accused at the time. Upton, 853 S.W.2d at 553 (citing Patterson
v. Illinois, 487 U.S. 285, 290-91 (1998)).

 Without question, the hearing itself on the motion for new trial is a critical stage of
the proceedings. Connor v. State, 877 S.W.2d 325, 326 (Tex. Crim. App. 1994); Trevino v. State,
565 S.W.2d 938, 940 (Tex. Crim. App. 1978). Trevino makes clear that a criminal prosecution
within the meaning of the Sixth Amendment and article I, section 10 of the Texas Constitution, does
not end with the defendant's conviction. Massingill v. State, 8 S.W.3d 733, 736 (Tex. App.--Austin
1999, no pet.).

 Does the thirty-day period after sentence in which to file a motion for new trial
constitute a critical stage of the criminal proceedings? See Tex. R. App. P. 21.4(a). For some time,
the Texas Court of Criminal Appeals did not address the issue, (6) while most courts of appeal
concluded that it was a critical stage. (7) In Cooks v. State, 240 S.W.3d 906 (Tex. Crim. App. 2007),
the Texas Court of Criminal Appeals decided, as a matter of federal constitutional law, that
the thirty-day period in which to file a motion for new trial is a critical stage of the proceeding and
a defendant has the right to counsel during that period. Id. at 911-12. Cooks held that while the
defendant there was deprived of counsel during a critical stage, the deprivation was subject to a
harmless error analysis and was harmless in that case. Id.

 In resolving cases like this one, we find we must consider rebuttable presumptions. 
There exists a rebuttable presumption that trial counsel continued to effectively represent a defendant
during the time for filing a motion for new trial. McBride v. State, 249 S.W.3d 673, 674
(Tex. App.--Fort Worth 2008, no pet.) (citing Oldham v. State, 977 S.W.2d 354, 363 (Tex. Crim.
App. 1998) (op on reh'g)); Funk v. State, 188 S.W.3d 229, 231-32 (Tex. App.--Fort Worth 2006,
no pet.). This presumption arises, in part, because counsel remains as defense counsel for all
purposes until expressly permitted to withdraw. See Ward v. State, 740 S.W.2d 794, 796 (Tex. Crim.
App. 1987). And this presumption is not rebutted when there is nothing in the record to suggest
otherwise. Smith v. State, 17 S.W.3d 660, 662-63 (Tex. Crim. App. 2000). When no motion for
new trial is filed in a case, the rebuttable presumption is that it (the motion) was considered
and rejected by a defendant and his counsel. Id.

 This general presumption does not apply where counsel has been permitted to
withdraw or when counsel is replaced by substitute counsel during the time in which to file a motion
for new trial. Garcia, 97 S.W.3d at 348; Massingill, 8 S.W.3d at 735. In urging that he has rebutted
the general presumption here, appellant points to his trial counsel's withdrawal and the substitution
of other retained counsel.

 We agree that the general presumption has been rebutted. Appellant, under the
circumstances, still must confront another presumption not established by the time his brief was
filed. In Cooks, the Texas Court of Criminal Appeals recognized a rebuttable presumption that an
appellant is adequately represented by substitute appellate counsel during the time remaining to file
a motion for new trial after the substitution and the withdrawal of earlier counsel. (8) 240 S.W.2d at
911. Here, there were nine days remaining after May 23, 2006, when the substitution occurred in
open court. Appellant's retained substitute counsel filed a motion for new trial, gave timely notice
of appeal, and secured appellant's release on bond. There is no complaint that substitute counsel did
not have sufficient time to advise appellant, to prepare and file the necessary documents, or to
adequately represent appellant in the time remaining. Nothing in substitute counsel's representation
rebuts the newly established presumption in Cooks, 240 S.W.3d at 911.

 Nevertheless, appellant relies upon his claim that he was deprived of counsel for
twenty-one days during the thirty-day period in which to file a motion for new trial. Appellant urges
the deprivation of counsel for twenty-one days resulted from interference with the attorney-client
relationship by the district attorney's office, who revealed to counsel recorded jail telephone
conversations. The record is not well developed in this regard. When was the revelation of the
telephone calls made? Who in the district attorney's office revealed this information to appellant's
trial counsel? Appellant does not deny the telephone conversations or their nature, which indicate
that the statements were made after the jury trial. Further, appellant has not disputed the fact that
his mother was allegedly tape-recording her telephone calls to trial counsel's law office. From the
affidavits introduced at the hearing on the new trial motion, we glean that appellant's relationship
with his trial counsel was not altogether compatible from the beginning. Appellant would have this
Court take the State roundly to task for disclosing the telephone conversations. He insists that some
form of punishment for the State is in order. Appellant recognizes that where a defendant has been
deprived of counsel during the time in which to file a motion for new trial, the normal procedure is
to abate the appeal and remand the case to the trial court for a new period in which counsel may file
a motion for new trial. See Garcia, 97 S.W.3d at 349; Prudhomme v. State, 28 S.W.3d 114, 121
(Tex. App.--Texarkana 2000, no pet.); Massingill, 8 S.W.3d at 738. Appellant argues that as a
result of the district attorney's behavior, a different remedy should be imposed. He urges that an
entirely new trial should be granted, or better still, that the prosecution should be dismissed. Either
action, appellant claims, would discourage all prosecutors from engaging in conduct such as the
district attorney's conduct here. We reject appellant's suggestions.

 The question is not who caused appellant's trial counsel to withdraw. There is
enough blame to spread around. The issue is whether, given all the circumstances, including the
withdrawal after twenty-one days and the substitution of retained counsel, appellant was deprived
of counsel during the critical stage involved. We conclude that appellant was not deprived of
counsel during the period in which to file a motion for new trial. Appellant lost twenty-one days of
the thirty-day period, but lost nothing but time. After his substitution, newly retained counsel within
nine days took all the action necessary to effectively represent appellant. (9) There are no claims that
substitute counsel was hampered by time restraints or was ineffective, or that appellant was
prejudiced by an action not taken within the twenty-one days before trial counsel's withdrawal. It
being appellant's burden, he has not rebutted the newly established presumption regarding substitute
counsel set forth in Cooks. See 240 S.W.3d at 911. The trial court did not abuse its discretion on
this basis. The third point of error is overruled.


CONSIDERATION OF AFFIDAVITS

 In his fourth point of error, appellant claims that the trial court abused its discretion
by admitting into evidence and considering the affidavits of his two trial attorneys at the hearing on
the motion for new trial.

 An abuse of discretion is the standard of review when an appellate court reviews
a trial court's ruling on the admission of evidence even in a hearing on a motion for new trial. See
Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). A trial court
abuses its discretion only when the decision lies outside the zone of reasonable disagreement. Green
v. State, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996).

 With regard to the types of evidence allowed at a hearing on a motion for new trial,
Rule 21.7 provides: "The court may receive evidence by affidavit or otherwise." Tex. R. App. P.
21.7; see also Holden v. State, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006). On May 31, 2006,
appellant filed a motion for new trial. Attached thereto were three affidavits from appellant, his
mother, Elisha Monty, and a co-worker, Duane Harris. The State filed a response on July 5, 2006,
requesting that the hearing be held on the basis of affidavits from the witnesses. No affidavits were
attached to this response.

 Appellant, in his motion, requested that the hearing be held prior to July 16, 2006,
the seventy-fifth day after the imposition of sentence on May 2, 2006, to prevent an overruling of
the motion by operation of law. See Tex. R. App. P. 21.8 (a). In its response, the State requested
that the hearing be held no later than July 17, 2006. This request was obviously influenced by the
fact that July 16, 2006, the last day to conduct a hearing on the motion for new trial, fell on a Sunday. 
Therefore, it was permissible to hold the hearing on Monday, July 17, 2006, the seventy-sixth day
after sentence. See Tex. R. App. P. 4.1(a). (10)

 At the hearing on July 17, counsel acknowledged that he understood the hearing was
to be conducted on affidavits, but objected to the State's two affidavits being introduced into
evidence as being untimely. He objected to the "eleventh hour" disclosure of a twenty-three-page
affidavit and a nine-page affidavit from Mark Brunner and Robert Phillips, respectively. Both had
served as appellant's trial counsel, and most of appellant's grounds for new trial dealt with claims
of ineffective assistance of counsel. Appellant's counsel had copies of these affidavits an hour or
so before they were offered by the State. Counsel urged that he had not had sufficient time to study
the affidavits. The trial court overruled the objection, noting that it would lose jurisdiction at the
end of the day. Appellant then introduced his affidavits. Later during the hearing, the trial court
sustained appellant's objections to specific parts of the State's affidavits. After the hearing, the
trial court entered a written order denying the motion for new trial before the end of the day and the
loss of jurisdiction.

 Appellant now acknowledges that Rule 21.5 of the Texas Rules of Appellate
Procedure does not place any time limitation on the State to file controverting affidavits to a
new trial motion. He contends that it is unreasonable for a trial court to permit the introduction into
evidence of previously undisclosed affidavits at a hearing on the last day before the motion is
overruled by operation of law. See Tex. R. App. P. 21.8 (c). Appellant urges that the "motion for
new trial rule" should be interpreted to require the State to file its affidavits within a reasonable time
prior to the trial court's loss of jurisdiction. Appellant's concerns are understandable. However,
we find no basis in the present rules for the courts to make such an interpretation. Moreover, a good
rule works both ways. The problem arises more frequently when affidavits alone are used as the
basis for the hearing on the motion for new trial. (11)

 Appellant does not point out how he was harmed or prejudiced by the admission
and consideration of the State's affidavits. The trial court did not abuse its discretion in admitting
and considering such evidence. The fourth point of error is overruled.


FAILURE TO FOLLOW PLEA AGREEMENT


 In point of error five, appellant asserts:



The trial court erroneously failed to follow the plea agreement entered in this case
because the appellant did not minimize his guilt in the PSI at the March 2006
sentencing hearing or because the trial court accepted the plea agreement for deferred
adjudication when saying at the plea hearing, "Mr. Pye, I accept your plea. I find the
evidence substantiates your guilt, but I do not find you guilty at this time," language
indicating a deferral of adjudication of guilt and acceptance of the plea.


 The point of error is multifarious and risks rejection on that basis, but we will address
it. Sterling v. State, 800 S.W.2d 513, 521 (Tex. Crim. App. 1990). We shall, however, consider the
two contentions in reverse order.

 Deferred adjudication community supervision (nee probation) is provided for by
statute. Tex. Code Crim. Proc. Ann. art. 42.12, § 5(a) (West Supp. 2008). (12) The essence of deferred
adjudication community supervision is that the defendant is placed on community supervision
without a finding of guilt and without being convicted of any offense. See McNew v. State,
608 S.W.2d 166, 172 (Tex. Crim. App. 1978); see also Ex parte Schillings, 641 S.W.2d 538, 540
(Tex. Crim. App. 1982); Triplett v. State, 686 S.W.2d 342, 345 (Tex. App.--Houston [1st Dist.]
1985, pet. ref'd).

 Professors Dix and Dawson have described the procedure normally followed:


The statue requires that if the trial court wishes to grant deferred adjudication
community supervision, it must do so "without entering an adjudication of guilt."
* * * This refers to the entry of a finding of guilt in the judgment filed in the case. 
The trial court is empowered to receive a plea of guilty with substantiating evidence,
orally find the defendant to be guilty of the offense to which he plead guilty, recess
the proceedings for a presentence investigation report, and at the recessed setting
grant deferred adjudication community supervision. So long as the finding of guilt
is not entered in the judgment before the court attempts to grant deferred
adjudication, it is not precluded from doing so by an oral finding of guilt.



43A George E. Dix & Robert O. Dawson, Texas Practice: Criminal Practice and Procedure § 39.52
(2d ed. 2002) (citations omitted). The procedure described has reference to the statutory provision
for presentence reports. Tex. Code Crim. Proc. Ann. art. 42.12, § 9(a) (West Supp. 2008).

 Trial courts have wide discretion in determining whether or not to accept a plea
bargain agreement. State ex rel Bryan v. McDonald, 662 S.W.2d 5, 9 (Tex. Crim. App. 1983);
Wright v. State, 158 S.W.3d 590, 593 (Tex. App.--San Antonio 2005, pet. ref'd). A trial court is
free to accept or reject a plea bargain agreement. Until the court accepts it, a negotiated plea bargain
agreement is not binding on the parties. Ortiz v. State, 933 S.W.2d 102, 104 (Tex. Crim. App.
1996); Holland v. State, 112 S.W.3d 251, 254-55 (Tex. App.--Austin 2003, no pet.). Once
expressly approved by the trial court in open court, however, a plea bargain agreement becomes a
binding contractual arrangement between the State and the defendant. Ortiz, 933 S.W.2d at 104;
Wright, 158 S.W.3d at 593-94. Under such circumstances, the trial court is bound to carry out
the terms of the agreement. Holland, 112 S.W.3d at 255. If the trial court rejects the plea bargain
agreement, the defendant's plea is rendered involuntary and the defendant is entitled to withdraw
the guilty plea. Id. (citing Zinn v. State, 35 S.W.3d 283, 285 (Tex. App.--Corpus Christi 2000,
pet. ref'd)).

 Here, the trial court was not bound by the plea bargain agreement as contended. 
During the guilty plea proceedings on February 6, 2006, the trial court stated to appellant: "I cannot
tell what conditions of probation would be imposed if I go along with this agreement because a
Presentence investigation must be completed and a report filed with the Court." (Emphasis added.) 
Later, the trial court stated: "I accept your plea. I find the evidence substantiates your guilt, but
I do not find you guilty at this time." (Emphasis added.) A trial court's statement that, "I accept
the plea," does not mean the trial court has accepted the terms of the plea agreement. Ortiz,
933 S.W.2d at 104. The trial court carefully followed procedure to avoid being bound by a plea
bargain agreement. Appellant's reliance upon the Wright opinion is misplaced. (13)

 Next, we also reject the claim that the trial court erred in failing to approve the
plea bargain agreement on the basis that appellant did not minimize his guilt in the presentence
report and at the recessed hearing on March 23, 2006. The presentence report and the record of the
hearing are contrary to appellant's claim, which he does not support by argument or reference to the
record. The fifth point of error is overruled.

 The judgment of conviction is affirmed.


 John F. Onion, Jr., Justice

Before Chief Justice Jones, Justices Henson and Onion*

Affirmed

Filed: February 27, 2009

Do Not Publish


* Before John F. Onion, Jr., Presiding Judge (retired), Texas Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 2005).

1. The pertinent parts of the counts of the indictment allege that on or about January 31, 2005,
appellant:


Paragraph One


 altered, made, completed, executed, or authenticated a writing, namely check 020903
from the account of Mac Haik Ford at Bank One, so that it purported to be the act
of Dustin Almazan, who did not authorize that act, with intent to defraud or harm
Dustin Almazan,


Paragraph Two


 issued, transferred, registered the transfer of, passed, published, or uttered a writing,
namely, check 020903 from the account of Mac Haik Ford at Bank One, knowing
such writing had been altered, made, completed, executed, or authenticated so that
it purported to be the act of Dustin Almazan, who did not authorize that act, with
intent to defraud or harm Dustin Almazan,
2. The term "defense" is often loosely used in both civil and criminal law practice. In fact,
a "defense" is a defendant's "stated reason why the plaintiff or prosecutor has no valid case." See
Black's Law Dictionary 343 (7th ed. 1999). There are many types of defenses including capacity,
collateral, dilatory, frivolous legal, meritorious and sham. Id. In legal circles, the word "defense"
may be commonly used to refer to the State's inability to prove each element of an offense beyond
a reasonable doubt in a criminal prosecution.



 Technically, a "defense" or an "affirmative defense" are only those so labeled in the penal
code. Tex. Penal Code Ann. §§ 2.03, 2.04 (West 2003).
3. The record at the guilty plea proceedings reflects, in part:


 Q. Now, we've talked about your defenses in the case if we went
to trial; notably, the fact that they would have to show that
you had a certain intent to defraud the complaining witness in
the case who is your cousin. I've gone over that with you,
haven't I?


 A. Right.


 Q. And you understand that if a jury had a reasonable doubt
about that, they would have to find you not guilty. I've
explained that to you.


 A. That's correct.


 Q. All right. Knowing all these things, knowing what the risk
and advantages are of going to trial, it's been your decision to
accept this plea agreement today. Is that correct?


 A. Yes.


 Q. Have you been satisfied with my representation in this case?


 A. Yes.

4. The use of the term "sentencing hearing" in reference to the March 23, 2006 proceeding
is not correct. This was not a bifurcated proceeding. Prior to the 1965 Code of Criminal Procedure,
all criminal trials were unitary. Duhart v. State, 668 S.W.2d 384, 386 n.3 (Tex. Crim. App. 1984). 
After the effective date of the code (January 1, 1966) all trials remained unitary except those
expressly authorized to be bifurcated--pleas of not guilty before a jury. See Tex. Code Crim. Proc.
Ann. art. 37.07 § 2(a) (West Supp. 2008). The bifurcation authorized by statute does not apply to
misdemeanor cases within the jurisdiction of the justice and municipal courts. Id.


 Bifurcation does not occur where a defendant waives trial by jury and enters a plea
of guilty or nolo contendere before the trial court to the indictment or other pleading. Barfield
v. State, 63 S.W.3d 446, 450 (Tex. Crim. App. 2001); Saldana v. State, 150 S.W.3d 486, 489
(Tex. App.--Austin 2004, no pet.); Lopez v. State, 96 S.W.3d 406, 412 (Tex. App.--Austin 2002,
pet. ref'd); State v. Kersh, 2 S.W.3d 636, 638 (Tex. App.--Houston [14th Dist.] 1999), aff'd,
127 S.W.3d 775 (Tex. Crim. App. 2004).


 A common practice that has developed is best explained by Professors Dix and Dawson:


 While it is common for a judge to bifurcate a bench trial into guilt/innocence and
penalty phases, that is neither required nor authorized by Article 37.07. By its own 
terms, bifurcation is to occur in cases "which are tried before a jury on a plea of
not guilty." The Court of Criminal Appeals recognized in Barfield v. State that
bifurcation does not occur in jury-waived trials even when the judge employs
procedures characteristic of bifurcation. Writing for the majority, Judge Womack
noted that the practice of unauthorized bifurcation is common in cases in which the
defendant is convicted (often on a plea of guilty or nolo contendere) and the judge
recesses the proceedings to enable a community supervision officer to conduct a
presentence investigation. The parties later assemble for the sentencing hearing
to consider the presentence report and determine sentence. While that procedure
may be thought of by the participants as a bifurcated trial, it is not, but is rather an
extended unitary trial punctuated by a recess in its middle.


43 George E. Dix & Robert O. Dawson, Texas Practice: Criminal Practice and Procedure § 38.14
(2d ed. Supp. 2008-09) (footnotes omitted).


 Here, there was a unitary trial recessed for preparation of a presentence report. If the
trial court had approved the deferred adjudication plea bargain, there would have been no
adjudication of guilty and no judgment and sentence as such. If the trial court rejected the plea
bargain, as it did, appellant had the right to withdraw his guilty plea and move to a jury trial on a plea
of not guilty, as appellant did. Only if appellant had persisted in pleading guilty on an "open plea"
would sentence have been considered.
5. Under the terms of the contract by which appellant retained Robert Phillips and his
law firm, the representation was to terminate on the date of the sentence. This is immaterial here
because of the law and the circumstances that unfolded.


 Trial counsel's legal responsibilities do not automatically terminate at the conclusion of
the trial. Ward v. State, 740 S.W.2d 794, 796 (Tex. Crim. App. 1987). Trial counsel remains the
defendant's counsel until expressly permitted to withdraw. Id. at 797.


 Trial counsel, whether retained or appointed, has the duty to consult with and fully
advise his client concerning the meaning and effect of the trial court's judgment, the
right to appeal from that judgment, and the necessity of giving notice of appeal and
taking other steps to pursue an appeal, as well as the duty to express his professional
judgment as to possible grounds for appeal and their merit, and delineate the
advantages and disadvantages of appeal.


McBride v. State, 249 S.W.3d 673, 674 (Tex. App.--Fort Worth 2008, no pet.) (citing Oldham
v. State, 977 S.W.2d 354, 360-61 (Tex. Crim. App. 1998) (op on reh'g); Funk v. State, 188 S.W.3d
229, 231 (Tex. App.--Fort Worth 2006, no pet.)).
6. See Smith v. State, 17 S.W.3d 660, 663 n.3 (Tex. Crim. App. 2000); Oldham, 977 S.W.2d
at 360; Connor v. State, 877 S.W.2d 325, 326-27 (Tex. Crim. App. 1994); Garcia v. State,
97 S.W.3d 343, 347 (Tex. App.--Austin 2003, no pet.).
7. As a matter of federal constitution law, most courts of appeals have concluded
the time period in which to file a motion for new trial is a critical stage of the proceedings. See,
e.g., Funk, 188 S.W.3d at 231; Garcia, 97 S.W.3d at 348; Champion v. State, 82 S.W.3d
79, 83 (Tex. App.--Amarillo 2002, pet. ref'd); Prudhomme v. State, 28 S.W.3d 114, 119
(Tex. App.--Texarkana 2000, pet. ref'd); Hanson v. State, 11 S.W.3d 285, 288
(Tex. App.--Houston [14th Dist.] 1999, pet. ref'd).
8. In this case, we are dealing with retained counsel before and after the substitution. Where
an indigent defendant is involved, the appointment of new counsel is the substitution of counsel.
9. It is noted that article 40.05 of the 1965 Texas Code of Criminal Procedure (now repealed)
provided for only ten days after conviction to file a motion for new trial. Act of May 27, 1965,
59th Leg., R.S., ch. 722 (art. 40.05), 1965 Tex. Gen. Laws 317, 477.
10. Tex. R. App. P. 4.1(a) provides:



(a) In General. The day of an act, event, or default after which a designated period
begins to run is not included when computing a period prescribed or allowed by these
rules, by court order, or by statute. The last day of the period is included, but if that
day is a Saturday, Sunday, or legal holiday, the period extends to the end of the next
day that is not a Saturday, Sunday, or legal holiday.
11. For a discussion of the use of affidavits in hearings on motions for new trial, see Charles
v. State, 146 S.W.3d 204, 210 (Tex. Crim. App. 2004); Manzi v. State, 88 S.W.3d 240, 250-55
(Tex. Crim. App. 2002) (Cochran, J., concurring).
12. Article 42.12, section 5(a) provides:


 (a) Except as provided by subsection (d) of this section, when in the judge's
opinion the best interest of society and the defendant will be served, the judge may,
after receiving a plea of guilty or plea of nolo contendere, hearing the evidence, and
finding that it substantiates the defendant's guilt, defer further proceedings without
entering an adjudication of guilt, and place the defendant on community supervision.
13. Wright v. State, 158 S.W.3d 590 (Tex. App.--San Antonio 2005, pet. ref'd) is
distinguishable from the instant case on the law and the facts. It involved three judges. The first,
a visiting judge, affirmatively approved in open court the plea bargain agreement before proceeding
to accept the defendant's nolo contendere plea. Id. at 594. Once expressly approved by a trial court
in open court, the plea bargain agreement is a binding contract between the State and the defendant. 
See Ortiz v. State, 933 S.W.2d 102, 104 (Tex. Crim. App. 1996).